[No. A066741. First Dist., Div. Two. Feb. 28, 1996.]

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY,
Cross-complainant and Appellant, v.
ROBERT SETSER et al., Cross-defendants and Respondents.

## COUNSEL

Pettit & Martin, Graham & James, John L. Boos, Janine D. Bloch and Robert L. Wainess for Cross-complainant and Appellant.

Sellar, Hazard, Snyder, Kelly & Fitzgerald and Jill H. Latchaw for Cross-defendants and Respondents.

## OPINION

**PHELAN, J.**—John Hancock Mutual Life Insurance Company (hereinafter John Hancock or appellant) timely appeals from an order of the San Mateo County Superior Court denying its application for attorney fees (Code Civ. Proc., § 1021.6)[1] on the grounds that a fee award was barred by a good faith settlement (§ 877.6) between the plaintiff, Ruby Waldron (hereinafter Waldron or plaintiff), and the remaining defendants, Robert Setser, Sofian Susantio and Net Equity Associates (collectively, hereinafter, the Setser defendants or respondents). We conclude that John Hancock's statutory claim for attorney fees, which is an aspect of a claim for implied indemnity on which it had prevailed prior to confirmation of the good faith settlement, is not barred by section 877.6. Accordingly, we reverse.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the sale to Waldron of a "reverse mortgage" program by the Setser defendants in January 1990. In June 1991, Waldron sued the Setser defendants, John Hancock and others,[2] alleging breach of contract, fraud, negligent infliction of emotional distress, and breach of fiduciary duty.[3] Although Waldron amended her complaint several times, at all relevant times the allegations against John Hancock were that the Setser defendants were its agents and used its letterhead to solicit Waldron for the reverse mortgage program and in subsequent correspondence encouraging her to participate. In August 1991, John Hancock cross-complained for indemnity against the Setser defendants, claiming that it did not know about, authorize or participate in their tortious conduct.

In September 1991, counsel for John Hancock tendered its defense to the lead attorney for the Setser defendants, Richard McNeely, asserting its belief that it had a valid claim for implied indemnity and would ultimately be entitled to recover its attorney fees and costs pursuant to section 1021.6. As far as this record discloses, Mr. McNeely never committed in writing to assume the defense of John Hancock,[4] but did repeatedly assure John Hancock's counsel, Janine Bloch, that all settlement offers made by the Setser defendants would be made on behalf of John Hancock as well. In exchange, Ms. Bloch agreed that John Hancock would waive its statutory claim for attorney fees if the Setser defendants successfully concluded a settlement including John Hancock. Accordingly, throughout pretrial settlement negotiations in November 1993, all offers made by the Setser defendants were made on behalf of John Hancock, too. However, settlement was not reached at that time.

By order dated November 16, 1993, the trial court granted both John Hancock's and Home Savings's motions for summary judgment. In its order on John Hancock's motion, the trial court concluded that: the Setser defendants were not acting as agents of John Hancock in connection with the

---

[2]Waldron also sued Michael Amodeo, the mortgage broker, and Home Savings & Loan (hereinafter Home Savings), the lender on the mortgage.

[3]A separate but related action, Waldron v. McNeely (Super. Ct. S.F. County, No. 956632) was filed in San Francisco Superior Court against John Hancock, the Setser defendants and their respective counsel, alleging breach of a confidentiality agreement reached in connection with settlement discussions in the instant action.

[4]In its brief, John Hancock contends that, on or about March 8, 1993, Mr. McNeely verbally indicated to its counsel that the Setser defendants would be willing to accept John Hancock's tender of its defense, subject to numerous conditions. In late 1993, during pretrial discussions, Mr. McNeely showed Ms. Bloch a draft of a letter he claimed was an acceptance of John Hancock's tender of defense. However, despite repeated requests, John Hancock never received a final version of that letter.

reverse mortgage transaction; John Hancock did not ratify the transaction; the Setser defendants had no ostensible authority to sell their reverse mortgage package as John Hancock's; John Hancock had no knowledge of any unlawful purpose on the part of the Setser defendants or their use of its stationery and business cards to solicit Waldron; and John Hancock had not agreed to participate with the Setser defendants in any scheme to defraud Waldron. By stipulation filed December 1, 1993, John Hancock's cross-complaint was severed from the trial of Waldron's claims against the Setser defendants.

Because Waldron immediately appealed from the summary judgment,[5] Ms. Bloch wrote to Mr. McNeely asking him to continue conducting settlement negotiations on behalf of John Hancock. According to the undisputed testimony of Ms. Bloch, Mr. McNeely agreed and, up to and including March 1994, consistently stated that he would notify her if he stopped negotiating for John Hancock.

Waldron's claims against the Setser defendants were set for trial on March 28, 1994; however, settlement negotiations continued past the trial date. John Hancock did not attend those settlement discussions because it had prevailed on its summary judgment motion and was not scheduled to go to trial, because Ms. Bloch believed that John Hancock's interests would be adequately protected by Mr. McNeely's efforts to settle on its behalf, and because counsel for John Hancock was not asked by the court to participate as was Home Savings's counsel. But despite Mr. McNeely's representations, the Setser defendants settled with Waldron on their own behalf on April 1, 1994, and placed the settlement on the record in superior court that same day without first notifying Ms. Bloch that they were no longer negotiating on behalf of John Hancock.[6] Mr. McNeely also failed to inform John Hancock that there was only a $30,000 gap between the amount the Setser defendants agreed to pay and the total amount Waldron had indicated she would accept to achieve a global settlement as to all defendants in both the San Mateo and San Francisco actions.

On April 29, 1994, the Setser defendants served John Hancock with a motion to determine that the settlement they reached with Waldron was a

---

[5] In a previous appeal to this court (*Waldron* v. *Setser* (Feb. 3, 1994) A064003 [nonpub. opn.]), Waldron sought review of the summary judgment entered in favor of John Hancock. We dismissed that appeal pursuant to rule 10(c) of the California Rules of Court on February 3, 1994, and denied Waldron's petition for rehearing on March 2, 1994. The Supreme Court denied Waldron's petition for review on April 27, 1994, and the judgment became final the same day. (Cal. Rules of Court, rule 24(a).)

[6] The terms of the settlement included a payment of $200,000 by the Setser defendants in exchange for which Waldron agreed to dismiss her claims against those defendants in both the San Mateo and San Francisco actions.

"good faith settlement" within the meaning of section 877.6. On May 4, 1994, John Hancock countered with a motion pursuant to section 1021.6, seeking an award of attorney fees on the grounds that it had been forced to defend itself in the instant action solely because of the tortious conduct of the Setser defendants, that it had properly tendered its defense to the Setser defendants and been rebuffed, and that it had been found to be without fault and had obtained a judgment in its favor on Waldron's claims. John Hancock also opposed the Setser defendants' good faith settlement motion on the grounds that it was the product of tortious conduct on the part of counsel for the Setser defendants that was intended to injure the interests of John Hancock. John Hancock further contended that, even if the Setser defendants' settlement with Waldron was found to be in good faith, the section 1021.6 motion survived that determination as a matter of law.

On May 19, 1994, the trial court held a hearing on the competing motions. On June 3, 1994, the trial court entered an order granting the Setser defendants' motion for an order establishing a good faith settlement under section 877.6, and denied John Hancock's motion for attorney fees pursuant to section 1021.6. This timely appeal followed.

## II. DISCUSSION

As a threshold matter, we note there is no real dispute in this case that, by the time the trial court determined that the settlement between Waldron and the Setser defendants was made in good faith, John Hancock had done all it could to perfect its claim to a statutory award of attorney fees under section 1021.6.[7] The summary judgment entered in favor of John Hancock, which was entered in November 1993 and became final well before the trial court made the good faith determination on June 3, 1994, established that John Hancock was "without fault" in the principal case (§ 1021.6), and that there was no theory of vicarious or strict liability under which it could be held responsible for the Setser defendants' conduct. Thus, by that time, John Hancock was "effectively" found to be the prevailing party on its claim for implied indemnity. (See *Uniroyal Chemical Co.* v.

---

[7]Section 1021.6 provides: "Upon motion, a court after reviewing the evidence in the principal case may award attorney's fees to a person who prevails on a claim for implied indemnity if the court finds (a) that the indemnitee through the tort of the indemnitor has been required to act in the protection of the indemnitee's interest by bringing an action against or defending an action by a third person and (b) if that indemnitor was properly notified of the demand to bring the action or provide the defense and did not avail itself of the opportunity to do so, and (c) that the trier of fact determined that the indemnitee was without fault in the principal case which is the basis for the action in indemnity or that the indemnitee had a final judgment entered in his or her favor granting a summary judgment, a nonsuit, or a directed verdict."

*American Vanguard Corp.* (1988) 203 Cal.App.3d 285, 294-295 [249 Cal.Rptr. 787] (*Uniroyal*) [defendant who obtained jury verdict absolving it of liability effectively prevailed on its claim for implied indemnity for purposes of section 1021.6].)[8] The summary judgment also established that John Hancock had been required to act in protection of its interests by defending against Waldron's claims solely because of the Setser defendants' tortious conduct. (§ 1021.6.) And the record clearly establishes that the Setser defendants were notified early and often of John Hancock's demand that they provide a defense. (§ 1021.6.) Thus, John Hancock appears to be eligible for an award of attorney fees under section 1021.6 *unless* the trial court's good faith determination under section 877.6 bars such an award as a matter of law.

A determination under section 877.6 that a settlement was made in good faith bars "any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." (§ 877.6, subd. (c).) In addition to those types of indemnity specifically enumerated in the statute, section 877.6, subdivision (c), has been interpreted expansively to bar claims for *total* equitable indemnity (*Far West Financial Corp.* v. *D & S Co.* (1988) 46 Cal.3d 796, 800, 804 [251 Cal.Rptr. 202, 760 P.2d 399] [total equitable indemnity is

[8]In *Uniroyal, supra*, 203 Cal.App.3d 285, the court was asked to decide whether a retailer (Helena Chemical Company) had prevailed on its claim for implied equitable indemnity against the manufacturer (Amvac) of an agricultural chemical that allegedly damaged the plaintiffs' orange crop, so as to entitle the retailer to attorney fees under section 1021.6. (*Uniroyal, supra*, at pp. 289-290.) After a jury trial, the jury rendered a verdict in favor of Helena on the plaintiffs' claims, but did not make any finding as to Helena's indemnity claim because the trial court had instructed that such a finding would be irrelevant if the jury found that the plaintiffs were not entitled to judgment against Helena. (*Id.* at p. 290.) The jury rendered judgment against both Amvac and the wholesaler (Leffingwell Chemical Company), but found that Leffingwell was entitled to total equitable indemnity because Amvac was 100 percent at fault and, thus, responsible for all the damages owed to the plaintiff. (*Ibid.*) When Helena sought to recover its attorney fees pursuant to section 1021.6, however, the trial court denied Helena's motion on the ground that it had not actually prevailed on its indemnity claim. (*Uniroyal, supra*, at p. 290.) The Fifth District reversed, holding as follows: "By the 1982 amendment to section 1021.6, the Legislature apparently wanted to make it clear that where a faultless defendant did not actually have occasion to prevail on a cross-complaint for indemnity because he prevailed in the underlying action, he was still entitled to ask for attorney's fees under section 1021.6. In making his claim for attorney's fees he is claiming as an indemnitee for costs incurred in the principal case where he was found to be without fault. When Helena made its claim for attorney's fees it was doing so as an indemnitee in an action where it had made such claim from the beginning. It would not have incurred such fees but for the tort of Amvac, which was 100 percent at fault. After a jury verdict in its favor it should be treated no differently than a defendant who has a judgment entered in its favor after motion for summary judgment, nonsuit or directed verdict. In all those events the indemnitee is found to be without fault, and they all should be held to have prevailed on a claim for indemnity." (*Uniroyal, supra*, at pp. 295-296.)

simply a form of "comparative indemnity"]), and claims based on implied *contractual* indemnity. (*Bay Development, Ltd.* v. *Superior Court* (1990) 50 Cal.3d 1012, 1019-1020, 1029-1032 [269 Cal.Rptr. 720, 791 P.2d 290] [implied contractual indemnity is a form of "equitable" indemnity within meaning of § 877.6, subd. (c)].) However, a good faith determination under section 877.6 "does not absolve a settling defendant from a subsequent indemnification claim in all circumstances." (*Bay Development, Ltd.* v. *Superior Court, supra*, 50 Cal.3d at p. 1019.) For example, our Supreme Court has held that a good faith settlement does not relieve a settling tortfeasor of its obligations to a nonsettling defendant under the terms of an *express* indemnification agreement. (*Id.* at pp. 1019, 1032-1033; *C. L. Peck Contractors* v. *Superior Court* (1984) 159 Cal.App.3d 828, 834 [205 Cal.Rptr. 754].) And at least one Court of Appeal has held that a good faith settlement does not bar claims by a nonsettling defendant who is entitled to indemnity by statute. (*Kantor* v. *Housing Authority* (1992) 8 Cal.App.4th 424, 432 [10 Cal.Rptr.2d 695] (*Kantor*).)

John Hancock contends that *Kantor, supra*, disposes of the issue presented in this appeal. We are not entirely persuaded. In *Kantor*, two pastors led a youth group on a six-day "mission" during a school vacation, which included a project of painting a community center owned by the Fresno County Housing Authority. (8 Cal.App.4th at pp. 426-427.) During a dinner break at the community center, several young boys who were not part of the youth group kept running up to the building and knocking on the windows and doors. One of those boys, Richard Espinoza, was injured when one of the pastors responded by rapping on and accidentally breaking one of the windows. (*Id.* at p. 427.) In a lawsuit brought by Espinoza on theories of negligence and premises liability, the pastors cross-complained against their codefendant, the housing authority, claiming that they were "special employees" who were entitled to a defense and indemnification under Government Code section 825 and Labor Code section 2802.[9] The housing authority subsequently settled with Espinoza and moved for an order determining the settlement to be in good faith pursuant to section 877.6. The trial court granted the housing authority's motion and dismissed the pastors' cross-complaint. (*Kantor, supra*, 8 Cal.App.4th at p. 428.) On appeal, the Fifth

---

[9]In relevant part, Government Code section 825 provides: "[I]f an employee or former employee of a public entity requests the public entity to defend him or her against any claim or action against him or her for an injury arising out of an act or omission occurring within the scope of his or her employment as an employee of the public entity and the request is made in writing not less than 10 days before the day of trial, and the employee or former employee reasonably cooperates in good faith in the defense of the claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed."

In relevant part, Labor Code section 2802 provides: "An employer shall indemnify his employee for all that the employee necessarily expends or loses in direct consequence of the discharge of his duties as such, or of his obedience to the directions of the employer . . . ."

District reversed, holding that the Legislature did not intend to preclude enforcement of rights of indemnity based on statute. (*Id.* at pp. 430-431.) The court explained its holding, saying: "If a public entity could avoid its obligations under Government Code section 825 by simply settling with a claimant, the very purpose of the statute would by thwarted." (*Id.* at p. 431.)

Respondents contend that *Kantor* is distinguishable because, unlike the mandatory statutory indemnity provisions at issue in that case, section 1021.6 authorizes an award of attorney fees that is entirely discretionary with the trial court. We are not persuaded by this effort to distinguish *Kantor.* Where a fee-shifting statute is phrased in discretionary terms, the court's discretion to deny fees to a party that meets its terms is quite limited. (See *City of Sacramento* v. *Drew* (1989) 207 Cal.App.3d 1287, 1297, fn. 3 [255 Cal.Rptr. 704] [trial court has no discretion to deny a fee award pursuant to section 1021.5 where statutory criteria are met]; *Hull* v. *Rossi* (1993) 13 Cal.App.4th 1763, 1767-1769 [17 Cal.Rptr.2d 457] [same]; but cf. *Bartling* v. *Glendale Adventist Medical Center* (1986) 184 Cal.App.3d 97, 104 [228 Cal.Rptr. 847] [even where all statutory criteria are satisfied, fees may be denied if "special circumstances render an award unjust"].) As we have discussed, there is no dispute that John Hancock has satisfied the specific statutory criteria for an award and attorney fees under section 1021.6, and there is no other basis in the record to justify denial of a fee award under the authority of that statute.

Although we reject respondents' attempt to distinguish *Kantor* based on the mandatory nature of the statutory language there involved, we see a more fundamental difference between that case and the instant one. Unlike the statutes at issue in *Kantor*, section 1021.6 does not on its face create a right to indemnity. It merely "permits an indemnitee to recover . . . attorney fees in an implied indemnity action under specified circumstances." (*Bay Development, Ltd.* v. *Superior Court, supra,* 50 Cal.3d at p. 1026.) As such, section 1021.6 is simply a fee-shifting statute which codifies an exception the so-called "American Rule" (§ 1021), under which each party must bear his or her own attorney fees unless otherwise provided by statute or contract. (*Fidelity Mortgage Trustee Service, Inc.* v. *Ridgegate East Homeowners Assn.* (1994) 27 Cal.App.4th 503, 512 [32 Cal.Rptr.2d 521] (*Fidelity Mortgage*).)

John Hancock has been inconsistent and vague in its characterization of section 1021.6. On the one hand, John Hancock recognizes that it qualifies as a "person who prevail[ed] on a claim for implied indemnity," to meet the requirements of section 1021.6. (*Ibid.*) Similarly, to bring its claim within the exception to section 877.6 carved out by *Kantor,* John Hancock appears to argue that section 1021.6 provides it with a statutory right of indemnification, which includes a right to recover attorney fees expended in defense

of this action. On the other hand, to avoid the bar of section 877.6, John Hancock argues that its "motion for attorney fees is *not* a claim for any kind of indemnity," but rather "an independent claim against the Setser defendants for the damages they caused to John Hancock directly: by causing John Hancock to be embroiled in litigation and failing to accept its timely and well-founded tender of defense." (Italics in original.) Stated otherwise, John Hancock argues that its claim for attorney fees is an "independent claim" to recover damages proximately cause by the "tort of another" under the theory of *Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620 [30 Cal.Rptr. 821, 381 P.2d 645] (*Prentice*). In any event, John Hancock contends that its claim for attorney fees is "certainly not a claim 'against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault,' " within the meaning of section 877.6. We disagree.

It is certainly true, as John Hancock argues, that section 1021.6 was enacted in response to the Supreme Court's decision in *Davis* v. *Air Technical Industries, Inc.* (1978) 22 Cal.3d 1, 5-8 [148 Cal.Rptr. 419, 582 P.2d 1010] (*Davis*). (*Fidelity Mortgage, supra*, 27 Cal.App.4th at p. 513; see also *Review of Selected 1982 Legislation* (1983) 14 Pacific L.J. 743.) As the *Fidelity Mortgage* court explained, "*Davis* was a product liability action in which the manufacturer and retailer of an elevator were sued by an injured third party. The retailer tendered its defense of the action to the manufacturer which refused to defend the retailer. The plaintiff in *Davis* asserted causes of action against both defendants for negligence, breach of express warranty, and strict liability. (*Davis* v. *Air Technical Industries, Inc., supra*, 22 Cal.3d at p. 3.) The manufacturer defended against the allegations of defective design while the retailer defended only against the allegations of its own negligence and breach of warranty. The trial court granted the retailer's motion for nonsuit on the breach of warranty claim. The plaintiff voluntarily dismissed the negligence claim. The jury found both defendants strictly liable to the plaintiff. However, on the retailer's cross-complaint for indemnification against the manufacturer, the trial court awarded the dealer indemnification for the amount of the plaintiff's damages *and* the cross-complainants attorney fees incurred in defense of the main action. (*Id.* at p. 4.) The Supreme Court reversed. It held the retailer was not entitled to indemnification as to its *attorney fees* because it had incurred those costs 'solely in defense of *alleged* wrongdoing on its part' and had 'defended exclusively against *allegations* of [its] own negligence . . . .' (*Id.* at p. 6, fn. omitted . . . .)" (*Fidelity Mortgage, supra*, 27 Cal.App.4th at p. 513, italics in original.)

In a vigorous dissent in *Davis*, Justice Mosk argued that the facts of that case should have been analyzed under the "tort of another" doctrine of

*Prentice, supra,* 59 Cal.2d 618. (*Davis, supra,* 22 Cal.3d at p. 10 (dis. opn. of Mosk, J.).) Under that doctrine, " 'A person who through the *tort of another* has been required to act *in protection of his interests* by bringing or *defending* an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, *attorney's fees,* and other expenditures thereby suffered or incurred. [Citations.]' " (*Davis, supra,* 22 Cal.3d at p. 10, italics in original, quoting *Prentice, supra,* 59 Cal.2d at p. 620.) Justice Mosk reasoned that the retailer in *Davis* was entitled to indemnification by the manufacturer for its attorney fees because the retailer was found to be without fault and the manufacturer was found to be the responsible party. (*Davis, supra,* 22 Cal.3d at pp. 9-10.) As Justice Mosk further explained, the Supreme Court in *Prentice* "made it abundantly clear . . . that even though an indemnitee may be protecting his own interests by defending a lawsuit, he is entitled to recover his expenditures, including attorney's fees, if his involvement is due to the tort of another." (*Davis, supra,* 22 Cal.3d at p. 10 (dis. opn. of Mosk, J.).)

Apparently, the Legislature agreed with Justice Mosk, adopting some— but not all—of the language he quoted from *Prentice, supra,* as the basis of section 1021.6. (*Fidelity Mortgage, supra,* 27 Cal.App.4th at p. 513; see also *Review of Selected 1982 Legislation, supra,* 14 Pacific L.J. 743.) But the Legislature also appears to have adopted Justice Mosk's characterization of the "tort of another" doctrine as just another form of "implied indemnity." (§ 1021.6.) Indeed, section 1021.6 is arguably broader than the "tort of another" doctrine, in that provides attorney fees to *any* "innocent indemnitee" who has incurred attorney fees to defend itself and has otherwise satisfied the requirements of section 1021.6 (*Fidelity Mortgage, supra,* 27 Cal.App.4th at p. 514), including one who has been found to be a joint tortfeasor but has been relieved of all responsibility in the fault allocation (*Uniroyal, supra,* 203 Cal.App.3d at pp. 299-301), or one who claims implied *contractual* indemnity (*Bay Development, Ltd.* v. *Superior Court, supra,* 50 Cal.3d at pp. 1026-1027).

As the foregoing discussion demonstrates, John Hancock's contention that its attorney fees claim is not one for any type of indemnity must be rejected. We think it clear that by its cross-complaint and section 1021.6 motion, John Hancock was seeking a form of implied equitable indemnity (i.e., total equitable indemnity) based on common law principles of "comparative fault." (See *Uniroyal, supra,* 203 Cal.App.3d at p. 294; and see generally, *Far West Financial Corp.* v. *D & S Co., supra,* 46 Cal.3d at pp. 805-809; *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899]; *Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322 [146 Cal.Rptr. 550, 579 P.2d 441]; *Bear Creek Planning Com.*

v. *Title Ins. & Trust Co.* (1985) 164 Cal.App.3d 1227, 1237 [211 Cal.Rptr. 172], disapproved on other grounds in *Bay Development, Ltd.* v. *Superior Court, supra,* 50 Cal.3d at p. 1032, fn. 12.)[10] We further conclude that John Hancock's claim for attorney fees under section 1021.6 is simply a statutory incident of its successful common law claim for implied equitable indemnity.

However, this conclusion does not end our inquiry. Of course, an equitable indemnity claim—including its attorney fees component under section 1021.6—would be barred under the express terms of section 877.6 if, as of the time the good faith determination was made, it was a "further claim[]" of a "joint tortfeasor" against the settling defendants. (§ 877.6, subd. (c).) But as we have discussed, however, John Hancock's indemnity claim was already established when it obtained summary judgment on the grounds that it was *without fault and that there was no viable theory of vicarious or strict liability* under which it could be held responsible for the Setser defendants' conduct. (*Uniroyal, supra,* 203 Cal.App.3d at pp. 294-295.) Indeed, that summary judgment became final no later than April 27, 1994, before the Setser defendants even filed their motion to confirm the good faith of their settlement with Waldron.

None of the cases cited to us by the parties, and none we have located through our own research, deals with such a situation.[11] We think it plain, however, that the bar of section 877.6, subdivision (c), was not intended to apply in the circumstances presented here. John Hancock's was not a "further claim" for indemnity but, rather, one which had been perfected

---

[10]In fact, like the retailer plaintiff in *Davis, supra,* John Hancock was seeking to recover attorney fees and costs incurred to defend itself against allegations of its own wrongdoing (e.g., aiding and abetting the Setser defendants, or conducting a joint venture to defraud Waldron), as well as to defend itself against claims of vicarious or strict liability for the acts of its alleged agents. Such an award of attorney fees has been characterized by our Supreme Court as an incident of a claim for "implied noncontractual indemnity." (*Davis, supra,* 22 Cal.3d at p. 3, fn. 1.)

[11]One case cited by respondents, *IRM Corp.* v. *Carlson* (1986) 179 Cal.App.3d 94 [224 Cal.Rptr. 438], involved a summary judgment entered in favor of a single defendant prior to the determination that a settlement with the remaining defendants was in good faith. In that case, Becker, a tenant who was injured when the shower door in his apartment shattered, sued his landlord and the manufacturer of the shower door. The landlord cross-complained against the general contractor who built the apartments and the subcontractor who installed the shower door. (*Id.* at p. 100.) The landlord obtained a summary judgment against Becker in 1981, and the case against the remaining defendants was resolved in 1983 by a settlement that was found to be in good faith. But, unlike in the instant case, the summary judgment in favor of the landlord was subsequently reversed by the California Supreme Court in *Becker* v. *IRM Corp.* (1985) 38 Cal.3d 454, 467 [213 Cal.Rptr. 213, 698 P.2d 116, 48 A.L.R.4th 601], overruled in *Peterson* v. *Superior Court* (1995) 10 Cal.4th 1185 [43 Cal.Rptr.2d 836, 899 P.2d 905].

before the trial court made its good faith determination. John Hancock was not, moreover, a "joint tortfeasor" when the good faith determination was made. To the contrary, there was a final judgment declaring John Hancock to be without fault and free of all responsibility for Waldron's alleged injuries. For all intents and purposes, John Hancock was at that point a stranger to the litigation. All that remained was the formality of an application for attorney fees under section 1021.6. The trial court erred when it declined to entertain that application on the grounds that it was barred by section 877.6.

Respondents nevertheless contend that a fee award under section 1021.6 is foreclosed by *Reliance Electric Co.* v. *Superior Court* (1986) 190 Cal.App.3d 369 [237 Cal.Rptr. 1] (*Reliance*). We disagree. In *Reliance*, the plaintiff was injured when a cargo crane at the Port of Los Angeles malfunctioned, dropping a cargo container on the truck the plaintiff was driving. (*Id.* at p. 372.) The plaintiff sued the owner of the crane, the City of Los Angeles (the City), and the manufacturer of the electric controls that allegedly malfunctioned (Reliance Electric). (*Ibid.*) The City cross-complained against Reliance Electric, as well as the manufacturer (IHI, Ltd.), and the seller (Nissho-Iwai) of the crane. The City also tendered its defense to Reliance Electric, but the tender was declined. (*Ibid.*) Subsequently, the plaintiff's claims were completely resolved by a settlement under which Reliance Electric, Nissho-Iwai, and IHI, Ltd., paid an agreed sum to plaintiff and his employer's worker's compensation carrier, in exchange for which the plaintiff gave releases to all defendants, including the City. (*Ibid.*) Thereafter, Reliance Electric moved under section 877.6 for court approval of the good faith of the settlement and for an order dismissing the City's cross-complaint for indemnity. (*Reliance, supra,* at pp. 372-373.) The City opposed the section 877.6 motion, contending that it was entitled to a fee award under section 1021.6. (*Reliance, supra,* at pp. 372-373.) The trial court granted Reliance Electric's motion, but refused to dismiss the City's cross-complaint. (*Id.* at p. 373.) Reliance Electric then filed a petition for writ of mandate directing the trial court to dismiss the City's indemnity claim. (*Ibid.*)

In the writ proceeding in the Court of Appeal, the City contended that its section 1021.6 claim was not barred by the good faith determination. (*Reliance, supra,* 190 Cal.App.3d at pp. 373-374.) The City reasoned that it was blameless with respect to the crane accident and, therefore, was not a "joint tortfeasor," and that its request for reimbursement of fees and costs was a statutory claim which sections 877 and 877.6 do not purport to bar.[12] The Second District agreed that sections 877 and 877.6 do not expressly extinguish the right to move for a statutory award of attorney fees under section

---

[12]The City made a third argument, that its indemnity claim was one for total equitable indemnity, a type of indemnity claim which several Courts of Appeal had held was not barred by sections 877 and 877.6. The *Reliance* court declined to address this issue (190 Cal.App.3d

1021.6. Nevertheless, the court held that the "loss of the opportunity to move for such an award is a necessary result of court approval of the good faith of a settlement in which the plaintiff has released the defendant against whom the fee award would have been sought." (*Reliance, supra,* 190 Cal.App.3d at pp. 374-375.) Interpreting section 1021.6, the court further held: "The terminology of section 1021.6 leaves no doubt that a fee award may follow the case's adjudication, not its settlement. The statute expressly requires that the trial court review the evidence; that the claimant have prevailed on its claim for implied indemnity; and that the claimant have won the case on summary judgment, nonsuit, or directed verdict (all judgments on the merits) or been found free of fault by the trier of fact. Because of the settlement, none of these conditions can be satisfied here—unless the court were to try the personal injury case despite the settlement. And the superior courts have more pressing business than the trial of settled tort cases." (*Reliance, supra,* 190 Cal.App.3d at p. 375.)

As is apparent from the foregoing, *Reliance, supra,* is readily distinguishable from the instant case. Unlike the City of Los Angeles, which was barred by the global settlement of all the plaintiff's claims from ever obtaining an adjudication of its own or any other party's fault, John Hancock had by the time of the good faith determination obtained a full-blown, final judgment, based on a "review of the evidence," that it was "without fault" in the principal case (§ 1021.6) and that it was, thus, not a "joint tortfeasor" within the meaning of section 877.6. John Hancock had also effectively prevailed on its indemnity claim, and satisfied all the other elements of section 1021.6 warranting an award of attorney fees. We therefore, conclude that John Hancock was entitled to recover reasonable attorney fees incurred in defense of this action,[13] and such an award is not barred by section 877.6.[14]

---

at p. 374), but the authority on which the City relied has since been overruled by the Supreme Court in *Far West Financial Corp.* v. *D & S Co., supra,* 46 Cal.3d at page 815, footnote 14.

[13]Of course, we decide only the case before us and do not intend our holding to be read as eliminating the trial courts' discretion to deny a motion for attorney fees under section 1021.6 in the future in a proper case. On the record presented, we discern no basis for denying John Hancock's application for fees. It would waste judicial resources to remand for full reconsideration of that application. However, we do not decide the reasonableness of the amount sought by John Hancock. The trial court is free on remand to receive and evaluate the parties' evidence, and make its own determination of the reasonableness of the amount sought.

[14]Given this disposition, we need not reach the issue whether the trial court abused its discretion in finding the settlement between Waldron and the Setser defendants to have been entered in good faith. We note, however, that uncontroverted evidence presented by John Hancock would support a finding that Mr. McNeely actively misled Ms. Bloch as to the status of settlement negotiations or, at a minimum, acted in bad faith by abandoning John Hancock's claims in the settlement process and proceeding without so much as informing Ms. Bloch that he would no longer continue negotiating on John Hancock's behalf.

## III. CONCLUSION

For all the foregoing reasons, the judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.

Kline, P. J., and Smith, J., concurred.