Filed 5/19/21  M-J SF Investments v. Kenny CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| M-J SF INVESTMENTS, LLC et al.,<br><br>     Cross-complainants and<br>     Appellants,<br><br>v.<br><br>ANDREW KENNY et al.,<br><br>     Cross-defendants and<br>     Respondents. | A160675<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-16-553275) |

Plaintiff Colby Lam sued several entities and individual defendants for personal injuries and property damage from mold growth in his condominium unit.  After Lam settled with Andrew Kenny and Geraldine Quiney (respondents), the trial court determined under Code of Civil Procedure[1] section 877.6 that the settlement was made in good faith and dismissed the cross-complaints of M-J SF Investments, LLC (M-J SF), The Banner Development Company (Banner), James Nunemacher, Michael Cassidy, and Bridget Ann Harty-Cassidy (collectively appellants) seeking indemnity from respondents.  Appellants now challenge the trial court's determination of good faith settlement and dismissal of their cross-complaints.  We affirm.

---

[1]     Further statutory references are to the Code of Civil Procedure unless stated otherwise.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The condominium units at issue were located in a building on Bush Street in San Francisco (the building). M-J SF purchased the building in 2004 and retained contractor Banner in 2005 to renovate the units. M-J SF then converted the building to condominium units in 2008 and sold unit 302 to respondents in 2009 and unit 202 to Lam in 2011.

Lam initially filed suit in 2016 against Kenny for breaching his duties under the homeowner's association Covenants, Conditions & Restrictions (CC&Rs) to maintain his unit and report water leaks, intrusion, and mold growth to the association. In 2018, Lam subsequently filed the second amended complaint (SAC) against appellants and respondents.[2] Lam alleged that in 2012, he developed a severe skin allergy requiring treatment. In February 2016, Lam allegedly noticed water staining, bubbling paint, and a leaking brown substance in the ceiling above his bathroom shower. A remediation company performed testing and found water intrusion from respondents' unit located directly above Lam's unit.

The SAC asserted causes of action for strict liability and breach of warranties against appellants for the allegedly defective design and renovation of the building; negligence and trespass against respondents for failing to maintain, report and repair water leaks in their unit that spread to Lam's unit; and negligence and private nuisance against all defendants. In the prayer for relief, Lam sought recovery for pain and suffering damages of $500,000, medical and related expenses of $200,000, and additional amounts for lost wages and displacement housing.

---

[2] Cassidy and Harty-Cassidy were named as controlling shareholders and officers of Banner, and Nunemacher and Cassidy were alleged to be controlling owners, managers and officers of M-J SF.

2

M-J SF and Banner filed a cross-complaint against respondents for equitable indemnity and contribution, alleging that any damages suffered by Lam were caused entirely or in part by respondents' intentional or negligent conduct. Nunemacher, Cassidy, and Harty-Cassidy also filed a cross-complaint against respondents for the same claims.

In November 2019, the trial court granted appellants' motion for summary judgment on Lam's SAC on the ground that Lam's personal injury claims against them were time-barred. The court entered judgment in favor of appellants against Lam.

Meanwhile, respondents entered into a settlement agreement with Lam to pay $30,000 in exchange for a release from any and all claims against them for personal injury and property damage. In March 2020, the trial court granted respondents' motion for a determination that the settlement was in good faith. The court also dismissed appellants' cross-complaints against respondents with prejudice pursuant to section 877.6, subdivision (c) (877.6(c)).[3]

In April 2020, appellants filed a petition for writ of mandate pursuant to section 877.6, subdivision (e) (877.6(e)), requesting that this court direct the trial court to vacate the judgment of dismissal. The petition was summarily denied.

Appellants appealed.

---

[3] For reasons that are unclear, the trial court's order crossed out all references to the seminal decision *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 (*Tech-Bilt*). In any event, we review the result, not the trial court's reasoning. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19.)

3

## A. Appellate Standing

We quickly dispense with respondents' preliminary contention that appellants lack standing to appeal because they ceased being active litigants in the case after obtaining summary judgment against Lam. Appellants were sufficiently " 'aggrieved' " by the dismissal of their cross-complaints to pursue this appeal. (*Maryland Casualty Co. v. Andreini & Co.* (2000) 81 Cal.App.4th 1413, 1419, fn. 8 (*Maryland Casualty*).)

## B. Motion to Dismiss

Respondents move to dismiss the appeal on the ground that a petition for writ of mandate is the exclusive means for obtaining review of a trial court's good faith settlement determination. We deferred consideration of that motion pending consideration of the appeal on the merits, and we now deny it.

Section 877.6(e), provides that "[w]hen a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate." In *Maryland Casualty*, *supra*, 81 Cal.App.4th 1413, the Court of Appeal examined this statutory provision and concluded that a writ petition is not the exclusive means of challenging a good faith settlement determination. (*Maryland Casualty*, at pp. 1420–1424.)

In *Maryland Casualty*, the nonsettling defendant had first filed a writ petition challenging the good faith settlement determination and dismissal of its cross-claims, and after the petition was summarily denied, a postjudgment appeal followed. (*Maryland Casualty*, *supra*, 81 Cal.App.4th at pp. 1418–1419.) In denying the settling defendant's motion to dismiss the appeal, *Maryland Casualty* noted that section 877.6(e) stated permissively that a

4

nonsettling defendant "may" petition for review by writ and did not expressly bar postjudgment review.  (*Id.* at p. 1420.)  The court then extensively examined the legislative history of section 877.6 and observed that the phrases "shall not be appealable" and "is not appealable" in the conference of delegates' resolution were omitted by the sponsor of the Assembly's original bill.  (*Id.* at pp. 1421–1422.)  Additionally, the Senate Judiciary Committee's analysis of the original bill stated that writ review was merely "*preferable*" to a direct appeal, and that there would be " '[n]o impact on ability to appeal[.]' " (*Id.* at p. 1422.)  Based on its analysis of the language and legislative history of section 877.6, *Maryland Casualty* concluded that "while the Legislature viewed a writ petition *before* trial as a *preferable* means of reviewing good faith settlement determinations, section 877.6(e) does not foreclose postjudgment review."  (*Id.* at p. 1423; accord, *Atlas Construction Supply, Inc. v. Swinerton Builders* (2021) 60 Cal.App.5th 175, 184–185; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 951–956; *Wilshire Ins. Co. v. Tuff Boy Holding, Inc.* (2001) 86 Cal.App.4th 627, 634–637 (*Wilshire*).)

We observe that two cases—i.e., *Main Fiber Products, Inc. v. Morgan & Franz Ins. Agency* (1999) 73 Cal.App.4th 1130 and *O'Hearn v. Hillcrest Gym & Fitness Center, Inc.* (2004) 115 Cal.App.4th 491—concluded that section 877.6(e) "precludes, not only a direct appeal from the interlocutory good faith determination, but also any review of that ruling upon an appeal from the final judgment."  (*Main Fiber*, at p. 1135; see *O'Hearn*, at p. 499.)  Although we note that neither case involved an appeal that followed a summary denial of a section 877.6(e) petition for writ review, we are in any event more persuaded by the thorough statutory construction analysis of *Maryland Casualty*.

Consistent with *Maryland Casualty* and its progeny, we conclude section 877.6(e) does not foreclose our appellate review of the determination that the settlement between respondents and Lam was in good faith.

## C. Good Faith Settlement

"Any party to an action in which it is alleged that two or more parties are joint tortfeasors . . . shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors. . . ." (§ 877.6, subd. (a).) A good faith determination bars "any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." (§ 877.6(c).)

The Supreme Court in *Tech-Bilt* provided guidelines for determining whether a settlement is made in good faith, that is, "whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." (*Tech-Bilt, supra*, 38 Cal.3d at p. 499.) This inquiry involves "a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants. [Citation.] Finally, practical considerations obviously require that the evaluation be made on the basis of information available at the time of settlement. '[A] defendant's settlement figure must not be grossly disproportionate to what a

6

reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be.' " (*Ibid.*)  The party asserting the lack of good faith has the burden of proof to demonstrate that the settlement is so far " 'out of the ballpark' " in relation to the above factors as to be inconsistent with the equitable objectives of the statute.  (*Id.* at pp. 499–500, fn. omitted.)

We review the trial court's good faith settlement determination for abuse of discretion.  (*Maryland Casualty*, *supra*, 81 Cal.App.4th at p. 1423, fn. 11.)  In determining whether discretion was abused, we may look at whether substantial evidence supported the determination that the settlement was in good faith (*North County Contractor's Ass'n, Inc. v. Touchstone Ins. Services* (1994) 27 Cal.App.4th 1085, 1091), and in so doing, we view the evidence in the light most favorable to the prevailing party, without reweighing the evidence or evaluating witness credibility.  (*Cahill*, *supra*, 194 Cal.App.4th at pp. 957–958.)

Drawing all presumptions and reasonable inferences in favor of the trial court's order, we conclude there was substantial evidence that the $30,000 settlement was within the reasonable range of respondents' proportional share of comparative liability for Lam's injuries.  The supporting evidence included Lam's August 2017 responses to form interrogatories in which he verified that he had suffered damages in the amount of $47,904.92.[4] There were also excerpts from the deposition of Marco Castillo, a plumbing contractor who performed repairs on respondents' unit.  Castillo testified in relevant part that he opened up the shower drain and determined that the cause of the leak was a defective or incorrectly-installed shower pan and/or shower components located between respondents' and Lam's units.  Finally,

---

[4]     It is also undisputed that Lam claimed an additional $13,500 for three months of housing displacement.

Lam's attorney, George Wolff, submitted a declaration stating in relevant part that "Lam is not claiming $700,000.00 or $600,000.00 in damages for this case." Taken together, this was substantial evidence supporting findings that respondents were not wholly responsible for Lam's damages and that the $30,000 settlement amount was generally within the "ballpark" of their potential liability based on Lam's verified damages claims.

Appellants complain that Lam's discovery responses were served nearly three years before the settlement and a year before Lam filed the SAC in which he alleged more than $700,000 in damages. Notably, however, the SAC was not verified, and Wolff's declaration undermined any reliance on Lam's prayer for relief as a conclusive basis for approximating his total recovery. Even if the probative value of Lam's discovery responses was diminished by the passage of time, we do not reweigh the evidence on substantial evidence review. (*Cahill*, *supra*, 194 Cal.App.4th at pp. 957–958.)

Appellants further contend that Castillo's testimony lacked foundation because he admitted he performed no inspection or testing. We disagree. The trial court did not abuse its discretion in finding sufficient foundation for Castillo's testimony based on his direct examination of the shower pan located underneath respondents' unit, which he personally took apart and examined. Any challenge to Castillo's credibility or the value of his opinion goes to the weight of his testimony, not its admissibility.

Appellants further contend there was evidence of collusion between respondents and Lam because respondents failed to submit a copy of the settlement agreement, and because Wolff refused to specify the precise amount of damages Lam was claiming. This is, at best, a tendentious inference that appellants seek to draw in their favor. On substantial evidence review however, we draw all reasonable inferences in favor of the

8

judgment (*Cahill, supra*, 194 Cal.App.4th at pp. 957–958), and we find no substantial evidence of collusion between respondents and Lam.

Finally, appellants contend the trial court ignored evidence that respondents did not conduct inspections, maintenance, or repair of their bathroom despite the existence of visible mold growth, which was in violation of their duties under the CC&Rs. On substantial evidence review however, we look only at the evidence and reasonable inferences supporting the successful party and disregard the contrary evidence. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.) Moreover, the trial court could have considered the above evidence but reasonably concluded that it only demonstrated respondents' partial comparative fault for Lam's damages.

In sum, we find no abuse of discretion in the trial court's determination that the settlement between Lam and respondents was made in good faith.

**D. Dismissal of Cross-Complaints**

Appellants contend that even if the trial court did not err in making its good faith settlement determination, it erred in dismissing the cross-complaints without requiring a separate motion and hearing. Furthermore, relying on *John Hancock Mutual Life Ins. Co. v. Setser* (1996) 42 Cal.App.4th 1524, 1533–1534 (*John Hancock*), appellants contend their claim for attorney fees was not a "further" claim of a joint tortfeasor barred by section 877.6(c), but rather, a claim under section 1021.6[5] and the "tort of another" doctrine

---

[5] Section 1021.6 provides: "Upon motion, a court after reviewing the evidence in the principal case may award attorney's fees to a person who prevails on a claim for implied indemnity if the court finds (a) that the indemnitee through the tort of the indemnitor has been required to act in the protection of the indemnitee's interest by bringing an action against or defending an action by a third person and (b) if that indemnitor was properly notified of the demand to bring the action or provide the defense and did not avail itself of the opportunity to do so, and (c) that the trier of fact determined

that was already "established" at the time of the good faith settlement determination.

### 1. Separate procedural mechanism

Several cases support the general contention that a separate procedure is required after a good faith settlement determination in order to dismiss a nonsettling defendant's cross-complaint. (See *Housing Group v. Superior Court* (1994) 24 Cal.App.4th 549 (*Housing Group*) [issuing peremptory writ of mandate to set aside portion of good faith settlement order dismissing cross-complaints against settling defendants in prior actions involving different plaintiffs]; *Shane v. Superior Court* (1984) 160 Cal.App.3d 1237 (*Shane*) [issuing peremptory writ of mandate to vacate order barring cross-complaint filed against settling defendant in another action in separate department].) As the court in *Housing Group* observed, section 877.6(c) does not expressly authorize the trial court to dismiss cross-complaints at the time it makes a good faith settlement determination. (*Housing Group*, *supra*, at p. 552.) Having separate proceedings " 'serves an important salutary function: it focuses the court's attention distinctly upon two completely different substantive questions—whether the settlement was in good faith and whether the claim sought to be dismissed is of such a nature as to be barred by a good faith settlement.' " (*Id.* at p. 553.)

Nevertheless, on the circumstances before us, we find *Norco Delivery Service, Inc. v. Owens-Corning Fiberglas, Inc.* (1998) 64 Cal.App.4th 955 (*Norco*) to be instructive. Faced with the same procedural question, *Norco* first noted that the nonsettling defendant had forfeited the issue by failing to

---

that the indemnitee was without fault in the principal case which is the basis for the action in indemnity or that the indemnitee had a final judgment entered in his or her favor granting a summary judgment, a nonsuit, or a directed verdict."

argue below that a separate procedural mechanism was required in order to dismiss its cross-complaint. (*Norco*, at p. 963.) The same holds true here, as appellants did not object below to the dismissal of their cross-complaints on the ground that a separate motion and hearing were required.

*Norco* next observed that "whether *Housing Group* and *Shane* even apply here is far from settled. Both cases questioned the effect of good faith determinations upon claims in other litigation not before the respective courts. [Citations.] Those are not our facts." (*Norco, supra*, 64 Cal.App.4th at p. 963.) Here, appellants' cross-complaints were likewise not filed in a separate action with a different plaintiff or in a different trial department. Thus, *Housing Group* and *Shane* are plainly distinguishable.

Finally, *Norco* cited other cases holding that courts may dismiss cross-complaints immediately following a good faith settlement determination. (*Norco, supra*, 64 Cal.App.4th at pp. 963–964.) These cases persuasively relied on the trial court's authority to strike all or any part of a pleading on its own motion (§ 436) and its inherent power to limit the focus of proceedings before it (§ 187). (See *Greshko v. County of Los Angeles* (1987) 194 Cal.App.3d 822, 830; *Hale v. Laden* (1986) 178 Cal.App.3d 668, 673.)

In any event, even assuming procedural error, appellants have demonstrated no prejudice. (Cal. Const., art. VI, § 13 [no judgment shall be set aside as to procedural error unless it resulted in miscarriage of justice]; § 475 [no decision shall be reversed by reason of error unless different result would have been probable in absence of error].) In the notice of motion and at several points in their supporting brief, respondents expressly requested dismissal of all cross-complaints by any joint tortfeasors. Appellants' only argument in opposition was that under the holding of *John Hancock, supra*, 42 Cal.App.4th 1524 (discussed below), their cross-complaints were not

11

barred by the good faith settlement determination.  The trial court evidently rejected this argument, and appellants offer no reason to believe the court probably would have reconsidered the issue if it were raised in a separate motion.

### 2. Dismissal of "established" claim for attorney fees under section 1021.6 and "tort of another" doctrine

We now turn to appellants' contention under *John Hancock*, *supra*, 42 Cal.App.4th 1524, that section 877.6(c) did not bar their claim for attorney fees.

In *John Hancock*, the plaintiff sued an insurer and its purported agents, the "Setser defendants," in connection with a reverse mortgage program.  (*John Hancock*, *supra*, 42 Cal.App.4th at p. 1526.)  The insurer cross-complained for indemnity against the Setser defendants and tendered its defense to their counsel, but the Setser defendants never assumed the defense.  (*Ibid*.)  The trial court later granted the insurer's motion for summary judgment, concluding the Setser defendants were not acting as the insurer's agents and had no ostensible authority to sell the reverse mortgage on the insurer's behalf, and the insurer did not ratify the Setser defendants' conduct or participate in any fraudulent scheme with them.  (*Id.* at pp. 1526– 1527.)  After settling with the plaintiff, the Setser defendants moved for determination of good faith settlement, and the insurer countered with a motion for attorney fees under section 1021.6.  (*Id.* at pp. 1527–1528.)  The trial court granted the Setser defendants' motion and denied the insurer's attorney fees motion as barred by the effect of the good faith settlement determination.  (*Id.* at pp. 1528–1529.)

The appellate court analyzed whether section 877.6 barred the insurer's claim for attorney fees under section 1021.6 after emphasizing the following facts:  "The summary judgment . . . established that [the insurer]

12

had been required to act in protection of its interests by defending against [the plaintiff's] claims solely because of the Setser defendants' tortious conduct. (§ 1021.6, subds. (a), (c).) And the record clearly establishes that the Setser defendants were notified early and often of [the insurer's] demand that they provide a defense. (§ 1021.6, subd. (b).) Thus, [the insurer] appears to be eligible for an award of attorney fees under section 1021.6 unless the trial court's good faith determination under section 877.6 bars such an award as a matter of law." (*John Hancock, supra,* 42 Cal.App.4th at p. 1529.)

In concluding that section 877.6 did not bar such an award, the *John Hancock* court held that the insurer's indemnity claim[6] was not a "further" claim of a joint tortfeasor within the meaning of section 877.6(c), because the claim was "already established" when the insurer "obtained summary judgment on the grounds that it was without fault and that there was no viable theory of vicarious or strict liability under which it could be held responsible for the Setser defendants' conduct." (*John Hancock, supra,* 42 Cal.App.4th at p. 1534.) That is, the indemnity claim was "one which had been perfected before the trial court made its good faith determination. . . . All that remained was the formality of an application for attorney fees under section 1021.6. The trial court erred when it declined to entertain that

---

[6]    Notably, the *John Hancock* court rejected the insurer's initial argument that its motion for attorney fees under section 1021.6 was not a claim for indemnity at all, but rather an " 'independent claim' to recover damages proximately caused by the 'tort of another' " under *Prentice v. North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618 (*Prentice*). (*John Hancock, supra,* 42 Cal.App.4th at p. 1532.) It was "clear" to the court that "by its cross-complaint and section 1021.6 motion, [the insurer] was seeking a form of implied equitable indemnity (i.e., total equitable indemnity) based on common law principles of 'comparative fault.' " (*Id.* at pp. 1533–1534.)

application on the grounds that it was barred by section 877.6." (*John Hancock*, at pp. 1534–1535.)

We find *John Hancock* to be inapplicable for several reasons. First, the summary judgment in the instant matter (which was based on statute of limitations grounds) did nothing to establish that appellants had been required to defend against Lam's claims "solely because of" respondents' allegedly tortious conduct. (*John Hancock*, *supra*, 42 Cal.App.4th at p. 1529.) As discussed, Lam sued appellants for their own alleged wrongdoing in defectively designing and renovating the building in or around 2005, before selling respondents' unit to them. Second, appellants have never argued, either below or on appeal, that they tendered the defense of the principal case to respondents, let alone that they did so "early and often," for purposes of the notice and demand requirements of section 1021.6, subdivision (c). (*John Hancock*, at p. 1529.) When confronted with the request for dismissal of their cross-complaints in respondents' motion for determination of good faith settlement, this was appellants' opportunity to demonstrate their eligibility to section 1021.6 attorney fees based on all of the statutory elements, but they did not. (See *John Hancock*, at p. 1536 [insurer not only prevailed on indemnity claim but "satisfied all the other elements of section 1021.6"].) Accordingly, we cannot conclude that appellants demonstrated an "established" claim for attorney fees under section 1021.6 at the time of the good faith settlement determination to justify the same result reached in *John Hancock*.

Appellants alternatively contend section 877.6(c) did not bar their claim for attorney fees because the claim sought damages under the "tort of another" doctrine. Under this doctrine, "[a] person who through the tort of another has been required to act in the protection of his interests by bringing

14

or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." (*Prentice*, *supra*, 59 Cal.2d at p. 620.) Though characterized as an "exception" to the American rule that each side bear its own litigation costs, the "tort of another" doctrine "is not really an 'exception' at all but an application of the usual measure of tort damages. The theory of recovery is that the attorney fees are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action." (*Sooy v. Peter* (1990) 220 Cal.App.3d 1305, 1310 (*Sooy*).) Accordingly, "nearly all of the cases which have applied the doctrine involve a clear violation of a traditional tort duty between the tortfeasor who is required to pay the attorney fees and the person seeking compensation for those fees." (*Ibid.*)

Appellants, like the insurer in *John Hancock*, fail to demonstrate that their claim for attorney fees was an " 'independent claim' " to recover damages under the "tort of another" doctrine rather than a claim for equitable indemnity based on comparative fault principles. (*John Hancock*, *supra*, 42 Cal.App.4th at pp. 1531–1532.) Appellants' cross-complaints did not allege attorney fees as damages based on respondents' violation of a duty, but instead, sought recovery of attorney fees based on principles of equitable indemnity and contribution. Appellants' perfunctory citations to *Prentice* both below and on appeal, with no meaningful legal analysis as to the existence of a "traditional tort duty" between them and respondents to support a theory of recovery under the "tort of another" doctrine (*Sooy*, *supra*, 220 Cal.App.3d at p. 1310), are insufficient to demonstrate that the trial court erred in dismissing their cross-complaints pursuant to section 877.6(c).

15

(See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [points raised but unsupported by reasoned argument treated as waived].)

## DISPOSITION

The judgment is affirmed, with costs to respondents.

_____
Fujisaki, Acting P. J.

WE CONCUR:


_____
Petrou, J.


_____
Wiseman, J.*


A160675


_____
* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.