[No. B124064. Second Dist., Div. One. July 7, 2000.]

MARYLAND CASUALTY COMPANY, Cross-complainant and Appellant, v.
ANDREINI & COMPANY OF SOUTHERN CALIFORNIA et al., Cross-defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

 \*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts B and C.

1414

**COUNSEL**

Latham & Watkins and Michael Bruce Abelson for Cross-complainant and Appellant.

David Jay Morgan, Inc., David Jay Morgan and Batya F. Smernoff for Cross-defendant and Respondent Andreini & Company of Southern California.

G. Edmund Siebel, Jr., and Richard A. Higbie for Cross-defendant and Respondent William von Henkle.

Law Office of Mark R. Matthews and Mark R. Matthews for Edward J. Dempsey by permission of the Court of Appeal.

**OPINION**

**ARAGON, J.***—In this insurance action, an insured sued an insurer and a broker. The insurer cross-claimed against the broker for indemnity. The insured and the broker settled. The trial court found that the settlement was

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

made in good faith and dismissed the insurer's cross-claims against the broker. The insurer sought relief by way of a petition for writ of mandate, which was summarily denied.

After the entry of final judgment, the insurer filed this appeal, challenging the good faith settlement determination and the dismissal of its cross-claims. The broker has filed a motion to dismiss the appeal on the ground that a determination of good faith can be reviewed only by writ of mandate, not postjudgment appeal. We conclude that, in conjunction with its appeal as to the dismissed cross-claims, the insurer can challenge the determination of good faith. Accordingly, we deny the motion to dismiss.

### BACKGROUND

Edward Dempsey owns two companies engaged in concrete coring and cutting. In 1990, he approached William von Henkle, an insurance broker, to obtain a policy for his businesses. At the time, von Henkle worked for Granger-Hanna Insurance Associates, a brokerage. Von Henkle obtained a policy for Dempsey from Highlands Insurance Company, effective until April 1, 1991.

In early 1991, von Henkle left Granger-Hanna and went to work for Andreini & Company of Southern California. He took Dempsey's account with him. Shortly thereafter, Highlands Insurance Company notified Dempsey that it would not renew his policy. On Dempsey's behalf, von Henkle completed an insurance application, commonly called an "ACORD," and sent it to several insurers. After receiving the ACORD, Maryland Casualty Company agreed to provide coverage subject to its receipt of additional information, including a "loss control" survey (i.e., a history of prior insurance claims). Maryland Casualty proceeded to bind coverage.

Less than a month later—and before Maryland Casualty had obtained the additional information—a fire destroyed the business premises. Dempsey's son, Mike, accepted blame for the fire, stating that he had accidentally started the blaze while trying to refuel his speedboat.

Dempsey submitted a claim under the insurance policy for approximately $1.7 million, which later rose to $4.2 million. Maryland Casualty investigated the loss and discovered that Dempsey's ACORD contained false statements. For example, the application indicated that (1) Dempsey's business operations did not involve exposure to flammable material, and (2) Dempsey had never had an insurance policy cancelled or not renewed. By letter dated May 24, 1991, Maryland Casualty informed Dempsey that it was

rescinding the policy, based on the "discovery of fraud or material misrepresentations by . . . [¶] . . . the insured or his or her representative in obtaining the insurance. . . ."[1]

On July 25, 1991, Dempsey filed this action against Maryland Casualty and Andreini & Company, alleging several causes of action, including breach of contract, breach of the covenant of good faith and fair dealing, and negligence.[2] For its part, Andreini & Company filed a cross-complaint against Maryland Casualty based on a theory of contractual indemnity.[3] Maryland Casualty, in turn, cross-complained against Dempsey, Andreini & Company, and von Henkle, alleging claims for rescission, breach of contract, fraud, indemnification, and conspiracy, among others.

In November 1993, Dempsey and Andreini reached a settlement. The terms were simple: Andreini's insurer would pay Dempsey $650,000. The deal was contingent upon the trial court's determination that the settlement was made in "good faith" for purposes of section 877.6 of the Code of Civil Procedure (hereafter section 877.6).[4]

Within days of the tentative settlement, Andreini filed a motion under section 877.6, seeking a determination of good faith and the dismissal of Maryland Casualty's cross-claims. Maryland Casualty filed opposition. The trial court, Judge Ernest George Williams presiding, denied the motion without prejudice and directed that the motion be renoticed for hearing on December 2, 1993. Before the second hearing, the parties filed additional

---

[1]For convenience, we refer to Dempsey and his companies collectively as Dempsey. We refer to Andreini & Company of Southern California and von Henkle collectively as Andreini. When referring solely to Andreini & Company of Southern California, we use the shortened version Andreini & Company.

[2]Dempsey also sued his son. That aspect of the litigation is not before us.

[3]Andreini & Company and Maryland Casualty had entered into a written agency agreement that required Maryland Casualty to indemnify Andreini & Company for liability or expenses incurred as a result of Maryland Casualty's errors or omissions in preparing and handling insurance policies.

[4]That statute provides: "Any party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors . . . . [¶] . . . [¶] . . . A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." (§ 877.6, subds. (a)(1), (c).) Maryland Casualty does not contend that its status as an insurer renders section 877.6 inapplicable. (Cf. *Rohr Industries, Inc. v. First State Ins. Co.* (1997) 59 Cal.App.4th 1480 [69 Cal.Rptr.2d 872].)

papers. On December 2, Judge Williams again denied the motion without prejudice.[5]

On January 3, 1994, Andreini filed a third motion seeking a determination of good faith. The motion was supported by a supplemental declaration from Andreini's attorney. In addition, Andreini submitted evidence to the effect that, in binding coverage for Dempsey, Maryland Casualty had violated its own internal guidelines and the standards in the insurance industry by failing to conduct a timely loss control survey. Maryland Casualty filed opposition.

On January 24, 1994, Judge Williams granted the motion, stating that the declarations in support of the two prior motions "didn't contain competent evidence that there was a sufficient settlement. That has been taken care of by these [new] declarations." The trial court's signed order, filed on January 28, 1994, recited that the settlement was made in good faith and that Maryland Casualty's cross-claims against Andreini were barred.

On January 31, 1994, Maryland Casualty filed with this court a petition for writ of mandate, asserting that the trial court had erred in barring its cross-claims.[6] On February 2, 1994, we summarily denied the petition (*Maryland Casualty Co. v. Superior Court* (Jan. 31, 1994, B081515) [nonpub. opn.]). On April 27, 1994, the California Supreme Court denied Maryland Casualty's petition for review (S037964).

Meanwhile, Dempsey's claims against Maryland Casualty went forward. In that regard, Andreini & Company's cross-complaint against Maryland Casualty was severed and placed on hold, pending the outcome of the Dempsey-Maryland trial. Dempsey's claims were tried to a jury from September to October 1994, with Judge William A. Drake presiding.

On October 31, 1994, the jury returned a verdict in favor of Dempsey, awarding him $3 million in compensatory damages and $58 million in punitive damages. Maryland Casualty brought a motion for new trial, which

---

[5]In denying the motions, the trial court found that the supporting declarations did not satisfy the test set forth in *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159]. There, the Supreme Court held that several factors should be considered in deciding whether a settlement was made in good faith, including "a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial." (*Id.* at p. 499.) "Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." (*Ibid.*)

[6]For purposes of appeal, we grant Maryland Casualty's request that we take judicial notice of related appellate proceedings.

Judge Drake granted, finding that the evidence was insufficient to support liability and that the award of damages was excessive. Dempsey and Maryland Casualty filed notices of appeal. Before briefing the case, they decided to settle the matter for $8.6 million. The appeal was voluntarily dismissed. On July 31, 1996, Dempsey filed a dismissal in the trial court.

In April 1998, Andreini & Company's cross-complaint against Maryland Casualty was tried to the court, Judge Macklin Fleming presiding. By its cross-complaint, Andreini & Company sought to be indemnified for the attorneys' fees and expenses it had incurred in defending the claims brought by Dempsey and Maryland Casualty. Judge Fleming found in favor of Maryland Casualty.

On May 21, 1998, the trial court entered judgment in favor of Maryland Casualty on Andreini & Company's cross-complaint. Notice of entry of judgment was served on May 26, 1998. On July 15, 1998, Maryland Casualty filed a notice of appeal.[7]

## DISCUSSION

Maryland Casualty argues that it can seek review of the trial court's good faith settlement determination by way of appeal after judgment.[8] Maryland Casualty also contends that its appeal was timely filed and that the trial court abused its discretion in finding that the settlement was made in good faith.[9]

### A. Review of Good Faith Determination

██ " 'The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose

---

[7]Dempsey is not a party to this appeal. For reasons unknown, he filed a respondent's brief. We do not consider it. On a related note, von Henkle, who *is* a party to the appeal, did *not* file a brief. In that respect, Maryland Casualty argues that von Henkle has "defaulted" and that the trial court's decision as to him should therefore be reversed. We disagree. When a respondent fails to file a brief, we may simply accept the appellant's statement of facts as true. (Cal. Rules of Court, rule 17(b).) We have done so here.

[8]The question before us is not whether a determination of good faith is directly appealable as an interlocutory decree. Rather, we decide whether Maryland Casualty can attack the determination of good faith on a postjudgment appeal from the order dismissing its cross-claims against Andreini. (See Code Civ. Proc., §§ 904.1, 906; *Greshko v. County of Los Angeles* (1987) 194 Cal.App.3d 822, 827, fn. 1 [239 Cal.Rptr. 846].) Further, although judgment was entered *in favor* of Maryland Casualty on Andreini & Company's cross-complaint, Maryland Casualty was sufficiently "aggrieved" by the dismissal of its cross-claims to pursue this appeal. (See Code Civ. Proc., § 902; *Rohr Industries, Inc. v. First State Ins. Co., supra*, 59 Cal.App.4th at pp. 1483-1484, 1486.)

[9]In the unpublished portion of this opinion, we address the timeliness of the appeal and the merits of the trial court's ruling.

of the law. . . .' . . . In determining that intent, we first examine the words of the statute itself. . . . Under the so-called 'plain meaning' rule, courts seek to give the words employed by the Legislature their usual and ordinary meaning. . . . If the language of the statute is clear and unambiguous, there is no need for construction. . . . However, the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose. . . . If the terms of the statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. . . . ' "We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." . . .' . . . The legislative purpose will not be sacrificed to a literal construction of any part of the statute." (*Bodell Construction Co. v. Trustees of Cal. State University* (1998) 62 Cal.App.4th 1508, 1515-1516 [73 Cal.Rptr.2d 450], citations omitted.)

■ Andreini has moved to dismiss Maryland Casualty's appeal on the ground that a *post*judgment challenge to a good faith settlement determination is barred by section 877.6, subdivision (e) (hereafter section 877.6(e)). That statute provides: "When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination *may* petition the proper court to review the determination by writ of mandate. The petition for writ of mandate *shall* be filed within 20 days after service of written notice of the determination, or within any additional time not exceeding 20 days as the trial court may allow." (Italics added.)

The use of the words *"may* petition," together with *"shall* be filed," suggests that a writ petition might not be the exclusive means of reviewing a good faith settlement determination. ■ "[T]he word 'may' is ordinarily construed as permissive, whereas 'shall' is ordinarily construed as mandatory, particularly when both terms are used in the same statute." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 443 [261 Cal.Rptr. 574, 777 P.2d 610].) ■ While section 877.6(e) seemingly does not foreclose review on a postjudgment appeal, it does make plain that *if* a party decides to seek *pre*judgment relief, the writ petition must comply with the statute's 20-day time limitation. In any event, given that section 877.6(e) does not bar postjudgment review on its face, we turn to the statute's legislative history.[10]

Section 877.6(e) began its legislative journey as a proposal by the Sacramento County Bar Association. From there, it was endorsed by the State Bar

---

[10]We take judicial notice of material from the legislative history of section 877.6(e). (See *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572, fn. 3 [88 Cal.Rptr.2d 19, 981 P.2d 944].)

Conference of Delegates in Resolution No. 9-18-81. (State Bar Conf. of Delegates, Res. No. 9-18-81, from the legis. bill file of Assemblyman Larry Stirling, sponsor of Assem. Bill No. 3712 (1981-1982 Reg. Sess.) p. 9-18a-81.) The resolution recommended that the Legislature amend section 877.6 to provide: "An order by the court determining that a settlement was or was not made in good faith *shall not be appealable.* When such a determination is made, the party aggrieved by such order may, within the time hereinafter provided, petition the proper reviewing court to review such determination by writ of mandate. Such petition for writ of mandate may be filed within 20 days after service of written notice of the order, or within such additional time not exceeding 20 days as the trial court may allow." (State Bar Conf. of Delegates, Res. No. 9-18-81, *supra,* at p. 9-18b-81, italics added.)

The delegates' resolution stated that the new provision would amend the code so that "an order by the [trial] court determining that a settlement was or was not made in good faith is not appealable and that a party aggrieved by such an order may petition the reviewing court for a writ of mandate." (State Bar Conf. of Delegates, Res. No. 9-18-81, *supra,* at p. 9-18a-81.) Under the proposal, "writ review would remain discretionary with the reviewing court." (*Ibid.*) The resolution acknowledged that the Alameda County Bar Association opposed the proposed statute because "[d]iscretionary review of a party's dismissal from an action pursuant to Code of Civil Procedure § 877.6 should not be the sole means of reviewing a trial court's order. . . . A party objecting to a settlement should have the absolute right of a review on the merits to protect his or her interests." (State Bar Conf. of Delegates, Res. No. 9-18-81, *supra,* at p. 9-18c-81.)

On March 22, 1982, Assemblyman Larry Stirling introduced Assembly Bill No. 3712 (1981-1982 Reg. Sess.), which was modeled on the State Bar Conference of Delegates' resolution. As the bill's sponsor, Stirling explained in a written statement: "[T]his bill seeks a more expedient resolution of a trial court determination that a settlement between a plaintiff and one or more alleged tortfeasors was or was not made in good faith. This proposal indicates that the *preferred* mode of review is a writ of mandamus rather than an appeal subsequent to final judgment in the case. Under present law, a settling plaintiff or settling defendant or cross defendant who [is] denied approval of the settlement must undergo further discovery in trial as against the settling tortfeasor, thus denying those parties the goals to be achieved by settlement. Likewise, if a settlement is approved but ultimately held after the judgment to have been in bad faith, the case will have to be retried to include the alleged tortfeasors who were improperly removed from the case. AB 3712 seeks an immediate resolution to this issue to the benefit of all parties

involved." (Assemblyman Larry Stirling, Statement to Assem. Com. on Judiciary, May 5, 1992, italics added.)

As worded in Assembly Bill No. 3712, section 877.6(e) read much the same way it reads today. However, the bill departed from the conference of delegates' resolution in one important respect: It never included a provision barring postjudgment review of good faith settlement determinations. Indeed, during the legislative process, the resolution was edited in that regard: Handwritten parentheses were placed around the proposed nonappealability provision, as were the handwritten notations, "strike according to author" and "don't want to preclude." (State Bar Conf. of Delegates, Res. No. 9-18-81, *supra*, at p. 9-18b-81.)

The analysis of Assembly Bill No. 3712 in the Senate Judiciary Committee stated: "The State Bar asserts that since many settlements are made immediately before trial, it is imperative that the review of the court's determination occur expeditiously and before trial. The writ of mandate procedures are well suited and appear *preferable* to a direct appeal of the order which could result in an unacceptable risk of long trial delay and the incurrence of avoidable expenses should the court's determination not be upheld. [¶] The proponent also asserts that the current remedy, appellate review following judgment, thwarts the policy of the law to encourage settlements." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3712 (1981-1982 Reg. Sess.) p. 3.) Of significance, the analysis continued: "No impact on ability to appeal [¶] A non-settling defendant is presently free to appeal a determination which dismissed a co-defendant pursuant to a settlement after judgment is entered, and this bill would not affect that right of appeal." (*Id.* at p. 4, underscoring in original.)

Before Assembly Bill No. 3712 was passed by the Legislature, it was amended to include a provision giving the presiding judge of the superior court the authority to disapprove personnel assignments made by the clerk. (Conf. Com., Analyis of Assem. Bill No. 3712 (1981-1982 Reg. Sess.) as amended Sept. 10, 1982, § 6.) On September 10, 1982, the bill was sent to Governor Brown. He vetoed it, stating that the issue of assignments for superior court clerks "merits further legislative review." (Governor's veto message to Assem. on Assem. Bill No. 3712 (Sept. 30, 1982) 10 Assem. J. (1981-1982 Reg. Sess.) p. 18794.)

During the 1983-1984 regular session of the Legislature, Assemblyman Stirling introduced Assembly Bill No. 232, which picked up where Assembly Bill No. 3712 left off, but without the provision concerning the assignment of superior court clerks. (See Assem. Bill No. 232 (1983-1984 Reg.

Sess.) as introduced Jan. 10, 1983.) Nor was there a provision making a good faith settlement determination nonappealable.

This time around, the legislative history reflected the legislators' concern that, without the passage of the bill, the appellate courts could not review a determination of good faith before judgment. For instance, the analysis prepared for the Assembly Judiciary Committee stated that "[t]here is no existing express provision for appellate review of a good faith determination prior to judgment." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 232 (1983-1984 Reg. Sess.) p. 1.) The analysis prepared for the Senate Judiciary Committee noted that "[e]xisting law does not expressly provide for pretrial appellate review of a court's determination of the good faith of a settlement . . . ." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 232 (1983-1984 Reg. Sess.) pp. 1-2.) In that vein, the California Judges Association opposed the legislation because "under current law an aggrieved party may file a writ upon a showing of an abuse of discretion." (*Id.* at p. 3.)[11]

The proposed statute was also based on the legislators' belief that "[t]he writ of mandate procedures are . . . *preferable* to a direct appeal of the order which could result in an unacceptable risk of long trial delay. It is also *preferable* to an appeal following judgment . . . . [¶] . . . [T]he current remedy, appellate review following judgment, thwarts the policy of the law to encourage settlements." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 232 (1983-1984 Reg. Sess.) p. 3, italics added.) The legislators understood, however, that writ review under the new statute "would be in the discretion of the reviewing court." (*Id.* at p. 4; see Assem. Com. on Judiciary, Analysis of Assem. Bill No. 232 (1983-1984 Reg. Sess.) p. 2.)

On June 25, 1984, the Legislature passed Assembly Bill No. 232, which worded section 877.6(e) in substantially the same form as it now appears. (1 Assem. Final History on Assem. Bill No. 232 (1983-1984 Reg. Sess.) p. 222; compare Stats. 1984, ch. 311, § 1, p. 1552, with 17A West's Ann. Code Civ. Proc. (2000 supp.) foll. § 877.6, p. 107.) On July 6, 1984, Governor Deukmejian signed the bill. (1 Assem. Final History, *supra,* at p. 222.)

Based on the foregoing legislative history and the language of section 877.6(e), we conclude that, while the Legislature viewed a writ petition *before* trial as a *preferable* means of reviewing good faith settlement determinations, section 877.6(e) does not foreclose postjudgment review. Although the State Bar Conference of Delegates recommended a nonappealability provision, the Legislature never entertained the idea. The author of

---

[11]A trial court's determination under section 877.6(e) is reviewed for an abuse of discretion. (See *Norco Delivery Service, Inc. v. Owens-Corning Fiberglas, Inc.* (1998) 64 Cal.App.4th 955, 962 [75 Cal.Rptr.2d 456].)

the bill expressly opposed the nonappealability language, and the analysis of Assembly Bill No. 3712 in the Senate Judiciary Committee made clear that the statute would not preclude postjudgment review.

Thus, with knowledge that postjudgment appeals were already allowed by law, the Legislature enacted a statute so that "any party aggrieved by the [good faith] determination *may* petition the proper court . . . [for a] writ of mandate." (§ 877.6(e), italics added.) We fail to see how such permissive language could shut the door on postjudgment appeals.[12]

Significantly, two years after section 877.6(e) became effective, Division Seven of this court held that a good faith settlement determination could be challenged on appeal: "The ruling on the motions for determination of good faith settlement is reviewable on appeal from the judgment (order of dismissal) as an 'intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from . . . .' (Code Civ. Proc. § 906.) Without merit is respondent['s] . . . argument that [cross-complainant] has no right to an appeal because she filed an earlier petition for writ of mandate challenging the ruling as to the good faith of the settlements, which writ was summarily denied." (*Greshko v. County of Los Angeles, supra,* 194 Cal.App.3d at p. 827, fn. 1.)

More recently, Division Two of the Fourth Appellate District stated: "A determination that a settlement has been made in good faith is a nonappealable interlocutory decree. [Citations.] 'Mandamus is the exclusive procedure for obtaining *immediate* review' of such an order. . . . [¶] . . . [¶] . . . Any party wishing to challenge the merits of a 'good faith settlement' determination must do so via a petition for writ of mandate in the manner and within the time prescribed by section 877.6, subdivision (e). [Citations.] In particular, an aggrieved party may not *forgo writ review* and seek instead to have the determination reviewed *for the first time in an appeal* from the final judgment arising out of the trial of the plaintiff's claims against the nonsettling defendants." (*Main Fiber Products, Inc. v. Morgan & Franz Ins. Agency*

---

[12]While the analysis prepared for the Senate Judiciary Committee on Assembly Bill No. 3712 stated that postjudgment appeals would continue to be available, the analysis on Assembly Bill No. 232 did not mention the subject. We do not consider this difference to be of importance because the Legislature viewed the two bills in identical terms. (See Assem. Com. on Judiciary, Analysis of Assem. Bill No. 232 (1983-1984 Reg. Sess.) p. 2; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 232 (1983-1984 Reg. Sess.) p. 7.)

(1999) 73 Cal.App.4th 1130, 1134, 1136-1137 [87 Cal.Rptr.2d 108] fn. omitted, italics added (*Main Fiber*).)[13]

Our conclusion that a good faith settlement determination can be reviewed by prejudgment writ and postjudgment appeal does not offend any principle of appellate jurisprudence. Before judgment, a writ of mandate (Code Civ. Proc., § 1085) is available to review a variety of trial court rulings, orders, and decisions. (See 8 Witkin, Cal. Procedure (4th ed. 1997) Extraordinary Writs, §§ 99, 101, 105-112, pp. 889-891, 893-902; Cal. Civil Writ Practice (Cont.Ed.Bar 3d ed. 1996) §§ 4.45, 4.52-4.58, 4.60-4.69, pp. 122, 126-132, 132-142.) By the same token, on a postjudgment appeal, "the reviewing court may review . . . any *intermediate* ruling, . . . order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . ." (Code Civ. Proc., § 906, italics added.)

To illustrate the point, we compare the separate statutory schemes governing the review of (1) a good faith settlement determination (§ 877.6) and (2) an order on a motion for summary adjudication (Code Civ. Proc., § 437c, subd. (f)). Like a good faith settlement ruling, an order on a summary adjudication motion is, by statute, subject to writ review. (Compare § 877.6(e) with Code Civ. Proc., § 437c, subd. (*l*).) In fact, both statutory schemes require that a writ petition be filed within 20 days after service of a written notice of the trial court's order. (*Ibid.*) Moreover, the reversal of a summary adjudication order on appeal, like the reversal of a determination of good faith, may lead to further proceedings in the trial court. And, like section 877.6(e), the summary adjudication statute is silent as to postjudgment review. Yet, our Supreme Court has recognized that summary adjudication orders can be challenged on a postjudgment appeal. (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 128 [32 Cal.Rptr.2d 275, 876 P.2d 1074]; *Lackner v. LaCroix* (1979) 25 Cal.3d 747, 753 [159 Cal.Rptr. 693, 602 P.2d 393]; see also *Trani v. R. G. Hohman Enterprises, Inc.* (1975) 52 Cal.App.3d 314 [125 Cal.Rptr. 34].)

To take another example, "[w]hile a denial of a dismissal motion [for lack of prosecution] is not *directly* appealable, it may be challenged either by a

---

[13]In *Main Fiber*, the court expressly declined to address the question before us, i.e., whether a nonsettling party, having previously sought but failed to obtain a writ, can challenge a determination of good faith on a postjudgment appeal. (*Main Fiber, supra*, 73 Cal.App.4th at p. 1137, fn. 4.) Nevertheless, *Main Fiber* did note that other courts had stated in dicta that the sole means of challenging a determination of good faith was by writ petition. (*Id.* at p. 1135, citing *Housing Group v. Superior Court* (1994) 24 Cal.App.4th 549, 552 [29 Cal.Rptr.2d 460], and *Rohr Industries, Inc. v. First State Ins. Co., supra*, 59 Cal.App.4th at pp. 1485-1486.) Because the cases cited in *Main Fiber* did not consider the legislative history of section 877.6(e), we decline to follow them.

petition for writ of mandate or in an appeal after a final judgment." (*Oskooi v. Fountain Valley Regional Hospital* (1996) 42 Cal.App.4th 233, 237 [49 Cal.Rptr.2d 769], italics in original.) The same holds true for orders related to the amendment of pleadings, discovery, and the right to trial by jury. (See *Jennings v. Marralle, supra,* 8 Cal.4th at p. 128; 8 Witkin, *supra,* Extraordinary Writs, §§ 105-109, 156-157, at pp. 893-898, 953-957; Cal. Civil Writ Practice, *supra,* §§ 4.54-4.57, 4.68-4.69, at pp. 127-131, 140-142.)

In sum, Maryland Casualty promptly petitioned this court for a writ of mandate—a discretionary remedy—when the trial court ruled that the Dempsey-Andreini settlement was made in good faith. The petition was summarily denied. Maryland Casualty may now seek review of the good faith determination on appeal as a matter of right. It follows that Andreini's motion to dismiss the appeal is denied.[14]

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The trial court's January 28, 1994 order, finding that the settlement was made in good faith under Code of Civil Procedure section 877.6, and barring the cross-claims of Maryland Casualty Company against William von Henkle and Andreini & Company of Southern California, is affirmed.

Spencer, P. J., and Vogel (Miriam A.), J., concurred.

Appellant's petition for review by the Supreme Court was denied October 25, 2000.

---

[14]Andreini and Maryland Casualty also filed motions related to the motion to dismiss. The related motions are denied as well.

*See footnote, *ante,* page 1413.