Filed 9/19/25

CERTIFIED FOR PARTIAL PUBLICATION[*]


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| KATHRYN FENNESSY et al., | C098976 |
| Plaintiffs and Respondents, | (Super. Ct. No. PC20160016) |
| v. | |
| RONALD ALTOONIAN, | |
| Defendant and Appellant; | |
| BROOK DE VINCENZI et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of El Dorado County, Dylan Sullivan, Judge. Affirmed.

Law Offices of Craig S. Miller and Craig S. Miller and Kenneth J. Sperandio, Jr., for Defendant and Appellant.

No appearance for Plaintiffs and Respondents.

Manning & Kass, Ellrod, Ramirez, Trester, Michael L. Smith and Mark R. Wilson, for Defendants and Respondents.

---

[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

1

Plaintiffs Kathryn and Christopher Fennessy purchased residential property held by the trust of Ronald Altoonian, who was represented in the sale by his agent Brook De Vincenzi of the firm De Vincenzi & Associates, doing business as Insight Real Estate (collectively, De Vincenzi or the De Vincenzi defendants). After the sale closed, the Fennessys discovered undisclosed and allegedly concealed details of a death that had occurred on the property, leading them to sue Altoonian and De Vincenzi. Altoonian, in turn, filed a cross-complaint against De Vincenzi for indemnity, contribution, breach of contract, breach of fiduciary duty, and negligence. The Fennessys ultimately settled their claims against De Vincenzi, and De Vincenzi successfully moved for a determination that the settlement was entered in good faith pursuant to Code of Civil Procedure sections 877 and 877.6.[1] In granting the good faith settlement determination, the trial court also found all of Altoonian's cross-claims barred under section 877.6, subdivision (c) as actual or artfully pleaded claims for indemnity or contribution. The Fennessys proceeded to trial on their claims against Altoonian, and a jury found Altoonian not liable. The Fennessys appealed from the judgment, and Altoonian cross-appealed. Through this court's mediation process, the Fennessys and Altoonian settled the appeal, but the cross-appeal was not resolved.

In the present cross-appeal, Altoonian contends that the trial court erred in finding that the good faith settlement determination barred three of his cross-claims against De Vincenzi: those asserting breach of contract, breach of fiduciary duty, and negligence. De Vincenzi argues in response that Altoonian's cross-appeal should be dismissed because a good faith settlement determination can be reviewed only through a petition for writ of mandate pursuant to section 877.6, subdivision (e), and that, if we reach the merits, the disputed cross-claims were properly dismissed. The Fennessys have not participated in this cross-appeal.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

We conclude that a postjudgment appeal is a permissible way to challenge a good faith settlement determination. We therefore have jurisdiction to reach the merits of Altoonian's cross-appeal. On the merits, we conclude that the trial court correctly determined that Altoonian's cross-claims for breach of contract, breach of fiduciary duty, and negligence were effectively claims for indemnity and thus correctly ruled the claims were barred. We therefore affirm the judgment.

BACKGROUND

In 2016, the Fennessys filed an action against Altoonian and De Vincenzi arising from the Fennessys' purchase of a home from Altoonian, through his trust. As alleged in the complaint, in 2014 the Fennessys entered a written agreement to purchase the property from the Altoonian trust. Before the close of escrow, the Fennessys received the seller's written disclosures, which revealed, as relevant here, that an occupant had died on the property within the previous three years. No details of the death were disclosed on the form, but upon inquiry, the Fennessys were informed that Altoonian's mother (the prior occupant of the property) had passed away from a heart attack while gardening with Altoonian. It was alleged that this information was provided by Altoonian to De Vincenzi, who then relayed it to the Fennessys through their realtor. After the close of escrow, the Fennessys learned that Altoonian's mother had "suffered a gruesome, unnatural death by suicide" and that Altoonian was present on the property when her death occurred. In their complaint, the Fennessys asserted claims for rescission, breach of contract, negligent and intentional misrepresentation, and other breaches of duty related to the sale.

Altoonian filed a cross-complaint against De Vincenzi soon after. Altoonian's amended cross-complaint pleaded claims for complete indemnity, partial indemnity, implied contractual indemnity, equitable contribution, breach of contract based on a residential listing agreement that Altoonian and De Vincenzi had entered into to sell the property, breach of fiduciary duty, negligence, and declaratory relief. Two years into the

3

litigation, the De Vincenzi defendants filed their own cross-complaint against Altoonian; that complaint is not included in the appellate record.

In 2022, a few weeks before trial, the Fennessys reached a settlement of their claims against De Vincenzi. Altoonian was not a party to the settlement. De Vincenzi then moved for a determination that the settlement with the Fennessys was made in good faith pursuant to section 877. As part of that motion, De Vincenzi requested the dismissal of Altoonian's amended cross-complaint, arguing that each of Altoonian's cross-claims was barred by section 877.6, subdivision (c). That provision states that a good faith settlement determination "shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." (§ 877.6, subd. (c).)

Altoonian opposed the motion, arguing that all of his cross-claims except those for equitable indemnity, declaratory relief, and implied contractual indemnity were beyond the scope of section 877 because they were based on a different set of obligations arising from the listing agreement, not the purchase agreement underlying the settled claims, and therefore should be allowed to proceed.

After a hearing, the trial court granted De Vincenzi's motion. The court observed that Altoonian had conceded that the settlement satisfied the factors set forth in *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 and that De Vincenzi was thus entitled to a finding that the settlement was made in good faith. As to the effect of that good faith determination on Altoonian's cross-claims against De Vincenzi, the court concluded that each of Altoonian's causes of action against De Vincenzi was barred by section 877.6, subdivision (c). The court found that Altoonian's claims for complete indemnity, partial indemnity, and contribution were barred because they were based on Altoonian's status as a joint tortfeasor. The court observed that Altoonian's allegations that De Vincenzi was primarily responsible for the plaintiffs' claims "necessarily admits

4

that . . . Altoonian was liable for some of the plaintiffs' damages as a joint, concurrent, and successive tortfeasor with [De Vincenzi] whose actions combine[d] to cause the plaintiff[s'] injury." The court further found that Altoonian had conceded that his claims for declaratory relief and implied contractual indemnity were barred by failing to oppose their dismissal.

As to Altoonian's claims for breach of contract, breach of fiduciary duty, and negligence—the only claims he seeks to revive through this cross-appeal—the trial court found them to be artfully pleaded claims for indemnity for the damages arising from the alleged misrepresentations and nondisclosures that made De Vincenzi liable to the plaintiffs in the underlying action. The court reasoned that, although the parties were not co-obligors on the contract in dispute, De Vincenzi's alleged breach of the listing agreement was "intertwined with" the defendants' joint liability for the misrepresentations and nondisclosures that damaged the plaintiffs and arose from "the alleged identical misrepresentations and nondisclosures by defendants Altoonian and [De Vincenzi] that are alleged as a basis for liability in the underlying action." Accordingly, the court found all of Altoonian's cross-claims against De Vincenzi were barred.[2]

After a trial on the Fennessys' claims against Altoonian, a jury found Altoonian not liable, and judgment was entered in his favor. The Fennessys appealed the judgment. Altoonian timely filed a cross-appeal, designating for review the trial court's rulings on certain motions in limine and its decision on the good faith settlement motion. The Fennessys subsequently voluntarily abandoned their appeal after successful appellate mediation. In light of the Fennessys' abandonment of their appeal, Altoonian's opening brief in this court specifies that his cross-appeal now seeks review only of the ruling on

---

[2] This reasoning appears in a tentative ruling. The record contains no order formally adopting this tentative ruling as the trial court's final ruling, but both parties treat this document as the court's final ruling on the good faith settlement determination.

5

the good faith settlement motion and only to the extent that it deemed certain of his cross-claims barred.

## DISCUSSION

Sections 877 and 877.6 provide a procedure whereby "[a]ny party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt" may obtain a summary determination of "the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors." (§ 877.6, subd. (a)(1).) In determining whether such a settlement was entered in good faith, trial courts consider the factors set forth in *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, *supra*, 38 Cal.3d at page 499, including "inter alia, whether the proposed settlement is within the reasonable range of the settling tortfeasor's total proportional liability, taking into account the settling tortfeasor's potential liability for indemnity to the allegedly vicariously liable tortfeasor as well as its remaining liability to the plaintiff." (*Far West Financial Corp. v. D & S Co.* (1988) 46 Cal.3d 796, 816.) A nonsettling defendant can oppose a motion for good faith settlement by asserting a lack of good faith in the making of the proposed settlement. (§ 877.6, subd. (d); *Tech-Bilt*, at pp. 499-500.)

A good faith settlement determination impacts the remaining claims by and against nonsettling defendants in two ways: it "cuts off the right of other defendants to seek contribution or comparative indemnity from the settling defendant, [and] the nonsettling defendants obtain in return a reduction in their ultimate liability to the plaintiff." (*Abbott Ford, Inc. v. Superior Court* (1987) 43 Cal.3d 858, 873; see §§ 877, subd. (a), 877.6, subd. (c).) As to the former, a good faith settlement determination specifically "bar[s]" a nonsettling defendant from asserting "any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." (§ 877.6, subd. (c); *Gackstetter v. Frawley* (2006) 135 Cal.App.4th 1257, 1271

6

(*Gackstetter*).) These twin effects reflect the "two major goals" of sections 877 and 877.6: "the equitable sharing of costs among the parties at fault and the encouragement of settlements." (*Abbott Ford*, at pp. 871-872.)

"When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate. The petition for writ of mandate shall be filed within 20 days after service of written notice of the determination, or within any additional time not exceeding 20 days as the trial court may allow." (§ 877.6, subd. (e).) The same subdivision further prescribes expedited deadlines for review of any such writ petition and tolls the time period for dismissal for lack of diligent prosecution while a petition is pending. (*Ibid.*)

## I.

We begin by addressing our jurisdiction to consider Altoonian's cross-appeal. In their response brief, the De Vincenzi defendants ask us to dismiss the cross-appeal on the ground that a good faith settlement determination can be reviewed only through a petition for writ of mandate under section 877.6, subdivision (e) and not by means of a postjudgment appeal. Both parties acknowledge that we have previously held that a writ petition is not the exclusive means of seeking appellate review of a good faith determination. (*Wilshire Ins. Co. v. Tuff Boy Holding, Inc.* (2001) 86 Cal.App.4th 627, 636-637 (*Wilshire*).) Both parties also acknowledge that the Courts of Appeal are divided on the question. (Compare *Pacific Fertility Cases* (2022) 78 Cal.App.5th 568, 573 ["a good faith settlement determination is reviewable only by a timely petition for writ of mandate in accordance with section 877.6"]; *O'Hearn v. Hillcrest Gym & Fitness Center, Inc.* (2004) 115 Cal.App.4th 491, 494, 499 [same]; *Main Fiber Products, Inc. v. Morgan & Franz Ins. Agency* (1999) 73 Cal.App.4th 1130, 1136-1137 & fn. 4 (*Main Fiber*) [same, but noting "possible exception" where appellant's previous writ petition was denied]; *Oak Springs Villas Homeowners Assn. v. Advanced Truss Systems, Inc.*

7

(2012) 206 Cal.App.4th 1304, 1307 ["A good faith settlement determination is a nonappealable interlocutory ruling and immediate review of the merits of that determination is obtainable only by a timely writ petition" pursuant to § 877.6] with *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [§ 877.6, subd. (e) does not "preclude postjudgment appeals of good faith settlement determinations where earlier writ petitions were summarily denied"]; *Wilshire, supra*, 86 Cal.App.4th at pp. 630, 636-637 [same]; *Maryland Casualty Co. v. Andreini & Co.* (2000) 81 Cal.App.4th 1413, 1425 & 1424-1425, fn. 13 (*Maryland Casualty*) ["a good faith settlement determination can be reviewed by prejudgment writ and postjudgment appeal," at least where nonsettling party previously sought but failed to obtain a writ]; *Greshko v. County of Los Angeles* (1987) 194 Cal.App.3d 822, 827, fn. 1 [finding good faith settlement determination reviewable on appeal from order dismissing cross-complaint as barred].)  In 2022, our state Supreme Court granted review to address whether a writ petition is the exclusive means of challenging an order approving or denying a good faith settlement (*Pacific Fertility Cases* (Aug. 17, 2022, S275134)) but the court later granted the parties' motion to voluntarily dismiss the case (*Pacific Fertility Cases* (Oct. 18, 2023, S275134)).  Based on the text and legislative history of section 877.6, subdivision (e), we conclude that a writ petition is not the exclusive method of obtaining appellate review of a good faith settlement determination.  Because Altoonian timely appealed the good faith settlement determination following the entry of final judgment, his cross-appeal is properly before us.

Beginning with the statutory text, subdivision (e) of section 877.6 provides in relevant part:  "When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate.  The petition for writ of mandate shall be filed within 20 days after service of written notice of the determination, or within any additional time not exceeding 20 days as the trial court may allow."  As the Court of

8

Appeal observed in *Maryland Casualty*, the leading authority to hold that this provision does not foreclose postjudgment review of good faith settlement determinations, "[t]he use of the words '*may* petition,' together with '*shall* be filed,' suggests that a writ petition might not be the exclusive means of reviewing a good faith settlement determination. '[T]he word "may" is ordinarily construed as permissive, whereas "shall" is ordinarily construed as mandatory, particularly when both terms are used in the same statute.' " (*Maryland Casualty*, *supra*, 81 Cal.App.4th at p. 1420.) Thus, subdivision (e) of section 877.6 "does not bar postjudgment review on its face." (*Maryland Casualty*, at p. 1420.) The statute simply specifies that "*if* a party decides to seek prejudgment relief, the writ petition must comply with the statute's 20-day time limitation." (*Ibid.*)

The general rule in California is that " ' "an appeal may be taken only from the final judgment in an entire action" ' " (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 756 ["one final judgment" rule]; § 904.1) and that on appeal from a final judgment, " 'the reviewing court may review . . . any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party' " (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 128, quoting § 906). We presume the Legislature was aware of this default rule when it added subdivision (e) to section 877.6. (See *People v. Buycks* (2018) 5 Cal.5th 857, 880 [Legislature presumed to be aware of existing laws and their judicial construction when adopting new law].) If the purpose of that addition was to preclude traditional postjudgment review of intermediate rulings, we would expect a clearer indication in the statutory text, like the Legislature has provided in other statutory schemes. As we previously observed in *Wilshire*, "the Legislature knows how to make writ review the exclusive mode of review if it wants to." (*Wilshire*, *supra*, 86 Cal.App.4th at p. 636; see *id.* at p. 637 [contrasting § 877.6, subd. (e) with appeal-preclusive language in §§ 170.3, subd. (d), 405.39, Bus. & Prof. Code, § 2337 & former Gov. Code, § 6259, subd. (c)]; see also *Pacific Fertility Cases*, *supra*, 78 Cal.App.5th at

9

p. 578 [acknowledging that Legislature "could easily have made any such intent express," as it did in some of the statutes cited in *Wilshire*].) Instead, the Legislature chose the permissive phrasing that a party aggrieved by a good faith settlement determination "may" petition the appropriate court for a writ of mandate. (§ 877.6, subd. (e); see *Wilshire*, at p. 637.) Thus, "[w]e fail to see how such permissive language could shut the door on postjudgment appeals." (*Maryland Casualty*, *supra*, 81 Cal.App.4th at p. 1424.)

De Vincenzi urges us to follow the contrary interpretation in *Pacific Fertility Cases* that "may petition" does not "necessarily make[] the section 877.6 writ review procedure nonexclusive." That court reasoned that the permissive " 'may' simply indicates that litigants have the expedited writ procedure available to them *should they wish to challenge* a trial court's good faith determination," because "no litigant is ever *required* to seek appellate review." (*Pacific Fertility Cases*, *supra*, 78 Cal.App.5th at p. 577.) Even if this were a possible reading of the statute, rendering the text ambiguous, the legislative history confirms that the Legislature did not intend section 877.6, subdivision (e) to foreclose resort to a postjudgment appeal. (*Madrigal v. Hyundai Motor America* (2025) 17 Cal.5th 592, 609, fn. 10 [court may consider legislative history to ascertain meaning of ambiguous statute].)

*Maryland Casualty* describes the legislative history of section 877.6, subdivision (e) in detail. (*Maryland Casualty*, *supra*, 81 Cal.App.4th at pp. 1420-1424.) As explained there, an amendment to add subdivision (e) to section 877.6 was first proposed in Assembly Bill No. 3712 (1981-1982 Reg. Sess.). (*Maryland Casualty*, at p. 1421.) Of particular significance to the present issue, the Senate Judiciary Committee's analysis of Assembly Bill No. 3712 included a section under the heading of "No impact on ability to appeal" stating: "A non-settling defendant is presently free to appeal a determination which dismissed a co-defendant pursuant to a settlement after judgment is entered, and this bill would not affect that right of appeal." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3712, p. 4.) Like other courts, we view this

legislative analysis as having "made clear that the statute would not preclude postjudgment review." (*Maryland Casualty*, at pp. 1422, 1424; see also *Wilshire, supra*, 86 Cal.App.4th at p. 636 [agreeing with the analysis and conclusion of *Maryland Casualty*, which "copiously canvassed and analyzed" the legislative history]; *Pacific Fertility Cases, supra*, 78 Cal.App.5th at p. 583 ["the Senate Judiciary Committee analysis for Assembly Bill 3712 . . . clearly stated that the amendment would not preclude postjudgment appellate review"].)[3]

The Courts of Appeal that have held that an interlocutory petition for a writ of mandate is the exclusive means of review have also relied on the policy rationale that "[a] contrary construction, permitting an aggrieved party to postpone review of the good faith determination until after the balance of the claims were tried and a final judgment issued months or years later, would prevent the very finality and certainty that writ review was intended to promote." (*Main Fiber, supra*, 73 Cal.App.4th at p. 1135; see, e.g., *Pacific Fertility Cases, supra*, 78 Cal.App.5th at pp. 584-585; *O'Hearn v. Hillcrest Gym & Fitness Center, Inc., supra*, 115 Cal.App.4th at pp. 498-499.) De Vincenzi invokes similar policy concerns. While there is force to these arguments, the Legislature's decision to allow immediate writ review, even without foreclosing postjudgment appellate review, does promote the policy goal of expeditious review by the Courts of Appeal. To the extent De Vincenzi argues that that policy goal would be more fully

---

[3] *Pacific Fertility Cases* concluded that this report does not inform the interpretation of section 877.6, subdivision (e) because that provision was enacted by a subsequent bill, Assembly Bill No. 232 (1983-1984 Reg. Sess.), and not Assembly Bill No. 3712, which was vetoed due to an unrelated court staffing amendment. (*Pacific Fertility Cases, supra*, 78 Cal.App.5th at pp. 583-584; see *Maryland Casualty, supra*, 81 Cal.App.4th at p. 1422 [describing veto].) We respectfully disagree because the relevant report was included and referenced in the legislative bill file for Assembly Bill No. 232. (Assem. Com. on Judiciary, bill worksheet for Assem. Bill No. 232 (1983-1984 Reg. Sess.) [stating in answer to what problem the bill seeks to remedy, "See last year's committee analysis" and attaching Senate Judiciary Committee's analysis of Assembly Bill No. 3712].)

11

served by making immediate review the exclusive mechanism for appellate review, we see that argument as better directed to the Legislature, which remains free to revise section 877.6 to specify that good faith settlement determinations are not appealable—as it has done in other statutory contexts. (*Wilshire*, *supra*, 86 Cal.App.4th at pp. 636-637.)

Finally, we acknowledge De Vincenzi's argument that we should not follow our decision in *Wilshire* permitting postjudgment appeal because, unlike the appellant in that case, Altoonian did not file a petition for writ of mandate at the time the trial court made the good faith settlement determination. Indeed, in *Wilshire*, we reasoned that the section 877.6 determination was reviewable on appeal from the judgment in that case "because Wilshire had earlier filed a timely writ petition in this court." (*Wilshire*, *supra*, 86 Cal.App.4th at p. 630; see *id.* at pp. 636, 637.) Likewise, in other leading cases that have allowed the appeal of a section 877.6 determination, courts relied on the fact that the appellants had previously sought timely review by filing a petition for writ of mandate, which had been summarily denied. (*Maryland Casualty*, *supra*, 81 Cal.App.4th at pp. 1418, 1425, fn. 13, 1426; *Cahill v. San Diego Gas & Electric Co.*, *supra*, 194 Cal.App.4th at pp. 945, 956.) This emphasis on a previous effort to obtain writ review was in response to an early decision addressing the availability of a postjudgment appeal of a good faith settlement determination. In *Main Fiber*, Division Two of the Fourth Appellate District held that "an aggrieved party may not forgo writ review and seek instead to have the determination reviewed for the first time in an appeal from the final judgment arising out of the trial of the plaintiff's claims against the nonsettling defendants," while specifying in an accompanying footnote that it was not considering the "possible exception to th[at] rule" that an appeal might lie where a prior writ petition was denied. (*Main Fiber*, *supra*, 73 Cal.App.4th at pp. 1136-1137 & fn. 4.) In appeal-permitting cases, courts emphasized that, unlike in *Main Fiber*, the appellants had tried to first seek review via writ of mandate. (*Maryland Casualty*, at pp. 1424-1425 & fn. 13; *Wilshire*, at p. 636; *Cahill*, at p. 956.) We see nothing in the reasoning of these cases,

12

however, to suggest that their conclusion allowing an appeal would not apply even without a prior writ filing. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2024) ¶ 2:260.7 ["reasoning in those cases suggests that those courts would find such orders reviewable on appeal from final judgment even *absent* the prior writ filing"].) Each of these courts concluded, based on the text and legislative history of section 877.6, subdivision (e), that the creation of a procedure for interlocutory writ relief did not foreclose the availability of postjudgment appeal. Although they each distinguished themselves on the fact of an earlier attempt at writ review, their analysis of the text and legislative history did not mention such an attempt as a necessary condition for subsequent appeal. And we believe that, had the Legislature intended to condition the general availability of an appeal on the prior filing of a writ petition, it would have included clearer language to that effect. (See Welf. & Inst. Code, §§ 366.26, subd. (*l*)(2) ["Failure to file a petition for extraordinary writ review within the period specified by rule . . . shall preclude subsequent review by appeal of the findings and orders made pursuant to this section"], 366.28, subd. (b)(2) [same].)

Here, Altoonian timely filed this cross-appeal after the Fennessys appealed from the final judgment (the jury verdict) entered against them. As section 877.6, subdivision (e) did not prevent him from appealing, postjudgment, the intermediate ruling barring his cross-claims against De Vincenzi, the general rule permitting such an appeal applies. (§§ 904.1, 906.)[4] We therefore proceed to the merits.

---

[4] Generally, a party can appeal directly from the dismissal of a cross-complaint that leaves no issues to be determined as to one party. (*Heshejin v. Rostami* (2020) 54 Cal.App.5th 984, 991 [" 'in a case involving multiple parties, a judgment is final and appealable when it leaves no issues to be determined as to one party' "]; *Kantor v. Housing Authority* (1992) 8 Cal.App.4th 424, 429 [dismissal of cross-complaint was appealable as "a final adverse adjudication of the cross-complainant's rights against a distinct party"].) From the record before us, however, it does not appear that the barring of Altoonian's cross-complaint adjudicated all claims as to De Vincenzi because De Vincenzi's cross-complaint against Altoonian appears to have remained unresolved.

On the merits, Altoonian acknowledges that the trial court correctly ruled that his causes of action against De Vincenzi for complete indemnity, partial indemnity, equitable indemnity, and contribution were barred because they were based on his vicarious liability for the actions of De Vincenzi, as his agent. He contends that the court erred in deeming barred his other cross-claims for breach of contract, breach of fiduciary duty, and negligence (§ 877.6, subd. (c)). We disagree.

Section 877.6, subdivision (c) provides that a good faith settlement determination "shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." "The Supreme Court has further held that a good faith determination bars all claims for indemnification or contribution, including claims for total as well as partial equitable indemnity." (*Gackstetter*, *supra*, 135 Cal.App.4th at p. 1271 [citing *Far West Financial Corp. v. D & S Co.*, *supra*, 46 Cal.3d at pp. 815-816; *Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1031, fn. 11].) "Indemnity has been defined as the obligation of one party to make good a loss or damage which another party has incurred." (*Cal-Jones Properties v. Evans Pacific Corp.* (1989) 216 Cal.App.3d 324, 328 (*Cal-Jones*).)

"[C]laims for indemnification can include other claims not labeled as indemnity claims, but that in reality are 'disguised' indemnity claims," meaning "causes of action purporting to state direct claims but which, in fact, seek to recover derivative damages." (*Gackstetter*, *supra*, 135 Cal.App.4th at pp. 1271, 1274.) "If the claims between the joint

---

(See *American Alternative Energy Partners II v. Windridge, Inc.* (1996) 42 Cal.App.4th 551, 557 ["When a cross-complaint remains pending between the parties, even though the complaint has been fully adjudicated, there is no final judgment"].) And no party argues in this appeal that Altoonian's time to appeal began running from the entry of the good faith settlement determination in which the trial court deemed his cross-claims barred.

tortfeasors are identical to those made by the plaintiffs or if the damages sought by the joint tortfeasors are those that the court would consider in determining the proportionate liability of the settling tortfeasor, then the claims are indemnity claims regardless of whether one or more of the claims are couched in affirmative language." (*Cal-Jones*, *supra*, 216 Cal.App.3d at p. 328.) "[W]hether a determination of a good faith settlement applies to a party or claim is a question of law that we review de novo." (*Gackstetter*, *supra*, 135 Cal.App.4th at p. 1270.)

Altoonian argues that his cross-claims for breach of contract, breach of fiduciary duty, and negligence should have been allowed to proceed, despite the good faith settlement, because in his view they are "separate" from the claims that De Vincenzi and the Fennessys settled. According to Altoonian, this is so because his breach of contract claim was based on the listing agreement between him and De Vincenzi, and not the purchase agreement with the Fennessys, and the fiduciary duty and negligence claims were based on independent duties De Vincenzi owed to him, the seller and client, not to the Fennessys as the buyers.

Like the trial court, we are not persuaded. The allegations of Altoonian's cross-complaint show that his cross-claims are, in effect, claims for indemnity. In his breach of contract cause of action, Altoonian alleges that, "[i]n any event that Plaintiffs' [(the Fennessys')] allegation[s] in their Complaint are established and found to be true against Cross-Defendants DeVincenzi, . . . , *then* Cross-Defendants DeVincenzi . . . have breached their written agreements, including the Residential Listing Agreement . . . ." (Italics added.) A virtually identical allegation appears in the breach of fiduciary duty and negligence claims as well, simply substituting breach of duties for breach of written agreements. The cross-complaint relies for its factual basis on the Fennessys' complaint, which is incorporated by reference. This demonstrates that Altoonian's claims are derivative of the Fennessys' claims against De Vincenzi. Both the Fennessys' and Altoonian's theories for De Vincenzi's liability rest on proving De Vincenzi's

15

misconduct directed toward the Fennessys. This makes them identical in the relevant respects (*Cal-Jones*, *supra*, 216 Cal.App.3d at p. 328), notwithstanding the existence of another contract (the listing agreement between Altoonian and De Vincenzi) and other common law duties that De Vincenzi may have owed to Altoonian. Each of the subject claims is "in effect for indemnification" because each "is based on alleged damages [Altoonian] suffered as a result of claims by the [plaintiffs]." (*Gackstetter*, *supra*, 135 Cal.App.4th at pp. 1275-1276.) Furthermore, in ruling on the good faith settlement motion, the trial court would have considered these theories of De Vincenzi's liability to Altoonian in deciding that the proposed settlement was "within the reasonable range of the [De Vincenzi defendants'] total proportional liability." (*Far West Financial Corp. v. D & S Co.*, *supra*, 46 Cal.3d at p. 816 [trial court must consider, inter alia, settling tortfeasor's potential liability for indemnity to nonsettling tortfeasor]; *Cal-Jones*, *supra*, 216 Cal.App.3d at p. 328.)

Altoonian likens his case to *William L. Lyon & Associates, Inc. v. Superior Court* (2012) 204 Cal.App.4th 1294, 1315, in which this court held that fiduciary duty, breach of contract, and negligence cross-claims brought by home sellers against their broker were separate from the plaintiff-buyers' claims against the broker. We held those causes of action nonderivative, however, for statute of limitations purposes. (*Ibid.*) *Lyon* did not involve any good faith settlement determination under section 877.6.

Also unavailing is Altoonian's analogy to *Tiffin Motorhomes, Inc. v. Superior Court* (2011) 202 Cal.App.4th 24. Although *Tiffin* did involve a trial court's good faith settlement determination, that determination was vacated on appeal because section 877.6 did not apply to the codefendants who were not "co-obligors on 'a' contract" and there was no allegation that the defendants were joint tortfeasors. (*Tiffin*, at pp. 30-31; see *id.* at pp. 27-29, 31-32; § 877.6, subd. (a)(1).) Here, Altoonian does not dispute that section 877.6 applies to him as an alleged *joint tortfeasor*. (§ 877.6, subd. (c) [good faith settlement determination bars any other "joint tortfeasor *or* co-obligor" from further

16

specified claims against the settling "tortfeasor *or* co-obligor," italics added].) *Tiffin* is therefore inapposite.

Finally, we reject Altoonian's argument that his prayer for damages seeking attorneys' fees and the return of De Vincenzi's sales commission distinguishes his claims from an indemnity cause of action. As a general matter, a nonsettling defendant's cross-claim for attorneys' fees incurred in defending itself against a settling plaintiff's claims and in bringing claims barred by a good faith settlement determination is itself "considered 'a form of implied equitable indemnity' that also can be barred by a good faith settlement." (*Gackstetter*, *supra*, 135 Cal.App.4th at p. 1276, quoting *John Hancock Mutual Life Ins. Co. v. Setser* (1996) 42 Cal.App.4th 1524, 1533.)

Here, Altoonian argues, and his cross-complaint confirms, that he sought attorneys' fees and costs from De Vincenzi "pursuant to the doctrine of 'tort of another' originally established" by *Prentice v. North American Title Guaranty Corp.* (1963) 59 Cal.2d 618, 620-621. Under that doctrine, "[a] person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." (*Id.* at p. 620.) Altoonian is correct that the attorneys' fees he has incurred in (successfully) defending against the Fennessys' claims in this litigation are not damages that the Fennessys suffered. But that does not change the fact that the asserted "tort of another" in this instance is the same tortious conduct for which the Fennessys were suing De Vincenzi. Both the Fennessys' claims against De Vincenzi and Altoonian's claim for attorneys' fees "rested on the identical failure" to fully disclose the nature of the prior death on the premises (*Cal-Jones*, *supra*, 216 Cal.App.3d at p. 328), and the "tort of another" attorneys' fees were "based on alleged damages [Altoonian] suffered as a result of claims by the [plaintiffs]" due to De Vincenzi's alleged actions (*Gackstetter*, *supra*, 135 Cal.App.4th at pp. 1275-1276).

17

As to recovery of the sales commission De Vincenzi received, Altoonian has not pleaded a factual basis that would entitle him to recover that commission. Mere "negligence in the performance of his [or her] duties, where there is no disloyalty, fraud or bad faith, does not deprive an agent of all right to compensation." (*Tackett v. Croonquist* (1966) 244 Cal.App.2d 572, 578.) As Altoonian's cross-complaint pleads only negligence by De Vincenzi, not willful or bad faith conduct, he "ha[s] not shown that [De Vincenzi's] potential liability to [him] was other than for equitable indemnity." (*Cal-Jones*, *supra*, 216 Cal.App.3d at p. 329 [indicating cross-claim for return of commission would not be derivative if sellers had sought punitive damages, pleaded bad faith or fraud, and alleged a factual basis for such finding]; see *Roberts v. Lomanto* (2003) 112 Cal.App.4th 1553, 1570; *Ziswasser v. Cole & Cowan, Inc.* (1985) 164 Cal.App.3d 417, 424-425.)

## DISPOSITION

The judgment is affirmed. Defendants Brook De Vincenzi and De Vincenzi & Associates, Inc., shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


        /s/
        FEINBERG, J.


We concur:


  /s/
DUARTE, Acting P. J.


  /s/
BOULWARE EURIE, J.

18